PATRICK DOUD

V.

OSSIAN GUTHRIE ET AL.

1. MISCONDUCT OF JURY—JURY VIEW.—In an action for damages to plaintiff's land by the erection by defendants of dikes in a river, the court announced that the jury would be sent to make a view, if both or either parties would pay the expenses.   Plaintiff refused to pay any portion of such expenses, and protested against the proposed view.   Thereupon counsel for defendants, in the presence and hearing of the jury, announced that they would pay all the expenses of the trip.  The jury proceeded to the place, twelve miles by rail, were then taken in defendants' conveyances to the river, and dined by defendants.   They visited defendants' bank, but wholly avoided visiting plaintiff's premises.  *Held*, that it would be a reproach on the administration of the law to suffer a verdict obtained under such circumstances to stand.

2. JURY VIEWS.—In this State it is not competent for the court to order a view against the objection of a party to a suit, except in cases where such view is authorized by statute.

3. JURY VIEWS OBJECTIONABLE.—In the absence of legislative provisions, describing the mode in which jury views are to be conducted, the court is of opinion that it is more in consonance with the theory and methods of judicial trials, that the jury should base their findings solely upon sworn testimony taken in open court, or by depositions taken as provided by law.

4. OPINIONS OF WITNESSES, WHEN ADMISSIBLE.—The opinion of witnesses possessing peculiar skill, is admissible whenever the subject-matter of inquiry is such that inexperienced persons are unlikely to prove capable of forming a correct judgment upon it without such assistance; in other words, when it so far partakes of the nature of a science as to require a course of previous habit or study in order to the attainment of a knowledge of it.

5. WATER-COURSES—NOMINAL DAMAGES.—Where by the erection of dams and dikes, water was caused to flow upon plaintiff's land, the law would imply nominal damages, and an instruction that "there must be proof of actual damage to entitle plaintiff to recover" would be erroneous.

ERROR to the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.   Opinion filed November 16, 1883.

This was case, brought by plaintiff in error against defendants in error, to recover damages alleged to have been caused to plaintiff's land by the erection of dams and dikes across and along the Desplaines river near plaintiff's land, whereby

the natural flow of water was obstructed and caused to over-flow plaintiff's land.

The case was before this court at the March term, 1882, when a former judgment for defendants was reversed for certain erroneous instructions, and the cause was remanded: 11 Bradwell, 194. Upon a second trial verdict and judgment again went for the defendants and the plaintiff brings the case here for review.

It appears from the bill of exceptions that after the plaintiff had introduced evidence tending to prove a cause of action, as alleged in his declaration, and during the progress of the trial, the court, without previous consultation with the plaintiff or his counsel, announced to the jury, parties and counsel, that the court would send the jury to the locality in question to view the premises if both or either of the parties would pay the expenses of the trip, including transportation and refreshments. That plaintiff's counsel excepted to such announcement; that defendants' counsel then stated that defendants would pay all of said expenses, and thereupon in the hearing and sight of the jury, one of the defendants handed to one of the bailiffs of the court a sum of money to be used in paying such expenses; that plaintiff's counsel was then asked whether his client would contribute thereto, which he refused to do, and protested against and excepted to such proceedings, and to the proposed view by the jury.

It further appears that among other witnesses, plaintiff called Frank Douglass, who testified that he had been engaged for twenty-five years in the business of mechanical engineering; that he was acquainted with hydraulics and hydrostatics, and the application of these principles to practice; that he had visited the locality in question, examined the dams and dikes and the new and old channels of the Desplaines river; had taken measurements of the capacity of the new and old channels, the fall of the river between certain points, the height of the dams, and had observed the general lay of the land and the flow of the river at that locality. Plaintiff's counsel then asked him the following question: "In your opinion, what effect, if any, do the dams, dikes and new chan-

Doud v. Guthrie.

nels constructed by the defendants have upon the water of the Desplaines river, and what effect, if any, upon plaintiff's land?" The court sustained the defendant's objection to said question, and refused to allow the same to be answered, to which ruling the plaintiff excepted.

Among other instructions given by the court at the instance of the defendants, was one to the effect that the owner of land has a right to use the same in any manner he may desire, and to build embankments upon, dig ditches in and through the same, and to change the natural flow of water through or upon the same, by erecting dams and digging ditches, or in any other manner, so long as he does not thereby cause injury or damage to his neighbor; to the giving of which plaintiff excepted.

A verdict having passed for the defendants, the plaintiff entered his motion for a new trial, in support of which an agreed state of facts was submitted to and considered by the court, which set forth, in substance, that the jury during the progress of the trial visited the locality of the dikes and dams, twelve miles from the court-house; that their railroad fares were paid by the bailiff sent with them by the court, out of money furnished by the defendants in the presence of the court before they started; that they were driven from the station at Summit to the dikes, where they entered defendants' boats, and were rowed by defendants' men to a point near defendants' ice pond; that they did not go upon plaintiff's land, nor upon his side of the river; that they were afterward driven in conveyances furnished by the defendants to the hotel of Dennis O'Brien, one of the defendants' witnesses on the trial, where they were treated to beer before dinner and to cigars after dinner, all paid for out of the money furnished to the bailiff by said defendants; that all this was done without the consent of the plaintiff or his counsel, and against his protest and exception.

The plaintiff's motion for a new trial having been overruled, he appealed to this court, and assigns for errors:

First. Permitting the jury to visit the locality in question.

Second. Misconduct of the jury.

Third. The giving of defendants' instructions.

Fourth. Rejecting evidence offered by plaintiff.

Fifth. Overruling plaintiff's motion for a new trial.

Mr. F. W. BECKER, for plaintiff in error; that at common law, a view was grantable only in cases when the question of title arose, cited Kempsted v. Deacon, 2 Salk. 665, S. C.; 1 Lord Raymond, 76.

This is not a real, but personal action: Stout v. McAdams, 2 Scam. 67.

As to ordering a view: Stampofski v. Steffins, 79 Ill. 303.

As to guarding the jury against improper influences: Lyons v. Lawrence, 12 Bradwell, 531; Sacramento v. Showers, 6 Nev. 291.

The diversion of a water-course will sustain an action, although no actual damage accrue: Plumleigh v. Dawson, 1 Gilm. 544.

As to expert testimony: Linn v. Sigsbee, 67 Ill. 75; Buf-fum v. Harris, 5 R. I. 243; Porter v. Pequonnoc M'f'g Co. 17 Conn. 249.

Mr. A. B. JENKS, for defendants in error; that a plan, map or picture of the locality can be properly presented to the view of the jury, cited Greenleaf on Ev. § 285; Wharton on Ev. §§ 676, 677; Smith v. Story, 14 Pick. 128; Hazen v. B. & M. R. R. Co. 2 Gray. 574; Ruloff v. The People, 45 N. Y. 213; Blair v. Pelham, 118 Mass. 420; Marcy v. Barnes, 16 Gray, 161; Hollenbeck v. Rowley, 8 Allen, 473; Cozzens v. Higgins, 1 Abbott, N. Y. 451; Underzook v. Commonwealth, 76 Penn. St. 340; Church v. Milwaukee, 31 Wis. 512; Commonwealth v. Coe, 115 Mass. 481, 505; Walker v. Curtis, 116 Mass. 98.

As to a view in condemnation proceedings: Wells on Em. Domain, § 254; R. S. Ch. 47, § 9.

As to the right of a judge to order a view: 1 Burrow's Report, 253; Tidd's Pr. § 796; Snow v. B. & M. R. R. Co. 65 Me. 230.

Instructions should be considered together: N. L. P. Co. v. Binninger, 70 Ill. 571; T. W. & W. R. R. Co. v. Ingraham, 77 Ill. 309.

Doud v. Guthrie.

The opinions of witnesses should not be received as evidence where all the facts on which such opinions are founded can be ascertained and made intelligible to the court or jury, nor where the inquiry is into a subject-matter, the nature of which does not require any peculiar habits or study or scientific knowledge to understand it: The City of Rockford v. Hildebrand, 61 Ill. 155; Linn v. Sigsbee, 67 Ill. 75; T. P. & W. R. R. Co. v. Conroy, 68 Ill. 560; City of Chicago v. McGiven, 78 Ill. 347; Muldowny v. I. C. R. R. Co. 36 Iowa, 462; Milwaukee, etc., R. R. Co. v. Kellogg, 94 U. S. 469.

WILSON, J. We might well content ourselves by reversing the judgment of the court below, solely by reason of the occurrences which took place in connection with the expedition of the jury to view the premises in question; for certainly if a greater travesty on the trial by jury ever occurred it has not come to our notice. Upon the announcement by the court that the jury would be sent to make the view, if both or either of the parties would pay the expenses, and the refusal of the plaintiff to pay any portion of the same accompanied with his protest against the proposed view, the counsel for the defendants stated in the presence and hearing of the jury that the defendants would pay all the expenses of the trip. This the jury might have regarded as tantamount to saying: If the plaintiff is afraid to have the jury inspect the premises, and thus have the evidence of their own senses in judging of the merits of the plaintiff's claim, the defendants are not, but on the contrary are willing to bear the entire expense of an inspection, thus at the very inception of the proceeding, creating a bias in the minds of the jury against the plaintiff.

Twelve miles by rail the following morning to Summit, thence by the defendants' conveyances to the river, where, embarking in the defendants' boats, they were rowed down the stream by the defendants' men, wholly avoiding the plaintiff's premises, for by the agreed facts they did not go upon the plaintiff's land, nor visit his side of the river. After reaching the lower dam they were conveyed to a hotel

kept by one of the defendants' witnesses, where they were treated to a dinner, including beer and cigars, and were subsequently returned to the city. All this was done and all expenses paid with money furnished, to the knowledge of the jury, by the defendants for the purpose.

The bare statement of the facts furnishes its own commentary. A trial attended with such concomitants was worse than a farce, and to suffer a verdict obtained under such circumstances to stand, would be a reproach to the administration of the law. In the very nature of things, the entertainment, taken altogether, could hardly have failed to have established the *entente cordiale* between the jury and the defendants, and disqualified them from rendering an impartial verdict

This court said in Lyons v. Lawrence, 12 Bradwell, 533, " The conduct of appellee in producing in court and offering to the jury refreshments, was improper and reprehensible, and would alone have justified the court in setting aside the verdict. Too much care and precaution can not be used in guarding the jury against improper influences, and preserving the purity of jury trials. Great strictness in this regard is needful in order to give due confidence in the results of their causes." And as was said in Knight v. Freeport, 13 Mass. 318, " every one ought to know that for any, even the least, intermeddling with jurors, a verdict will be set aside."

But aside from the improper manner in which the view was conducted, we incline to the opinion that in this State it is not competent for the court to order a view against the objection of a party to a suit, except in cases where such view is authorized by statute, as in condemnation proceedings.

In England and in several of the States in this country, statutes have been passed authorizing views in some cases as a matter of right, in others in the discretion of the court. In some of the English statutes, the manner of making the view was prescribed, while in others, which authorized in general terms a view, rules were adopted by the courts prescribing the various steps to be taken, and it is interesting to notice the great care observed by the courts in framing their

Doud v. Guthrie.

rules to guard against improper influences being brought to bear upon the jury.

A side bar order was entered, directed to the sheriff, commanding a view by six or more of the jurors; the place, and the day and hour of meeting was designated in the order; two " showers," one for each party, were appointed to show the place in question and dispute between the parties, but they were to hold no communication with the jurors, further than pointing out the localities. The names and places of residence of the showers was designated in the order; no evidence of any sort was allowed to be given to the jury, and the order provided that the jury should be refreshed at the equal charge of both parties: see the case of Stones v. Menhan, 2 Ex. R. 382. So particular were the courts in guarding against any abuse of the right of view.

The right of view seems formerly to have existed in England as a common law right prior to the statute of 2 Westminster, in cases where the title to land was drawn in question, or rents issuing out of land, and perhaps in some other cases: 6 Bac. Ab., Tit. " Juries," and such right was also recognized in the State of New York in like cases prior to the passage of the statute in relation to it there. Mr. Wharton, in his work on evidence, seems to treat it as a common law right resting in the discretion of the court. But it will be found upon examination that in all the cases cited by him in support of the text, the order for the view was made under the authority of a statute or by the consent of the parties. Wharton on Evidence, Sec. 346, Note 4, and in one of the cases cited, the power is expressly denied. The passage of statutes in several of the States of the Union authorizing views, may perhaps be properly regarded as an implied admission by them, that without some legislative provision, the courts can not rightfully exercise such a power.

In this State, except in condemnation cases, no statutory provision is made for a jury view, nor, so far as we are advised, has the power of the court to order a view ever been passed upon by the Supreme Court. In the case of Stampofski v. Steffins, 79 Ill. 303, where one of the questions before the

jury was, whether certain furniture was made in a workman-like manner, one of the jurors, while the trial was in progress, visited the place where the furniture was stored, and made an examination of it. It was held that such conduct was irregular and unlawful, and sufficient to vitiate the verdict, had the objection been made in apt time.

In State v. Bertin, 24 La. An. 46, which was an indictment for burglary, the court, on motions of the State, directed the jury to retire from the court room, and visit and inspect the premises where the offense is alleged to have been committed. He also directed a witness for the State to accompany them and point out the places marked on the diagram of the premises which the witness had testified to the day before, and which the State had offered in evidence. The jury were specially instructed not to converse with the witness, and the witness was instructed to make no explanations, but to confine himself to pointing out appearances as described on the diagram.

The judgment was reversed in consequence of this proceeding. The court, by Howe, J., said: "Why such proceedings were permitted, we are not informed and can not imagine. * * * * Concede that in the absence both of the accused and the judge, the witness and the jury obeyed these instructions to the letter, it would result merely that the witness gave testimony on the premises, out of court, and in the absence of the accused, in the same way that a dumb person gives testimony, namely by signs."

It is true that was a criminal prosecution, but the reasoning of the court is also applicable in a civil suit. It seems to us more in consonance with the theory and methods of judicial trials, that the jury should base their findings solely upon sworn testimony taken in open court, or by depositions taken as provided by law: 79 Ill. 303. Many practical difficulties spring out of the admission of evidence derived from mere inspection by the jury out of court. Such evidence is not subject to the usual tests applicable to other testimony. It is not subject to cross-examination; it can not be rebutted nor impeached; it can not be incorporated into a bill of exceptions,

Doud v. Guthrie.

nor be made a part of the record; the party against whom the verdict goes can not know, nor can the court determine, on a motion to set aside the verdict as being against the evidence, how far the jury relied upon the view and how far upon the sworn testimony given in court.    Where maps, plans, models, weapons or other articles are brought into court and submitted to the inspection of the jury, they are susceptible of being described and explained by witnesses, and thus an approximation be made as to their nature, and the weight to be given to them as evidence.

But a still greater objection to jury views, in the absence of legislative provisions prescribing the manner in which they are to be conducted, is the danger of abuses which are liable to attend them, of which we have a conspicuous example in the case before us.

In sustaining the objection to the question put by the plaintiff to the witness Douglass, we are of opinion the court erred. · After testifying that he had been engaged for many years in the business of mechanical engineering and was acquainted with hydraulics and hydrostatics, and their application to practice, that he had examined the dikes and dams in question, that he had taken measurements of the capacity of the new and old channels, the fall in the river between the upper and lower dams, and had observed the general lay of the land and the flow of the river in that locality, he was asked: "In your opinion, what effect, if any, do the dams and dikes and new channels constructed by the defendants, have upon the water of the Desplaines river, and what effect, if any, upon the plaintiff's land?"   The question is not to be regarded as calling for the mere opinion of the witness, but rather as asking for the statement of a fact. Suppose the question had been " what effect, if any, did the construction of the dams have upon the flow of the water?" would it be claimed that such a question was not in substance asking for the statement of a fact?   The insertion of the words "in your opinion" does not affect the substance of the question.   A man may testify as to the height of a building or the width of a stream, without having taken any measure-

ments of the same. In a certain sense he is giving only his opinion, but in a larger sense it is but the statement of a fact based upon observation and experience. But if the question is to be regarded as calling for the mere opinion of the witness, we think, under the facts shown, he was qualified to testify as an expert. Moreover, that he was so qualified, is conceded by the general objection to the question; for had it been claimed that he was not shown to be an expert, the objection should have been special. Mallory v. Perkins, 9 Bos. 572. No clearly defined line can be drawn between the two classes of cases in which expert testimony is, or is not, admissible. The cases on this subject are almost numberless, and we shall not attempt to distinguish between them. The rule is thus stated in the note to Carter v. Boehm, 1 Smith Lead. Cas. 286. " On the one hand it appears to be admitted that the opinion of witnesses possessing peculiar skill is admissible whenever the subject-matter of inquiry is such that inexperienced persons are unlikely to prove capable of forming a correct judgment upon it without such assistance; in other words, when it so far partakes of the nature of a science, as to require a course of previous habit or study, in order to the attainment of a knowledge of it." We think the present case falls within this rule.

In Folkes v. Chadd, 3 Doug. 157, which was an action of trespass for cutting a bank which had been constructed to prevent the overflow of the sea, and the question was as to the effect of the bank in choking up a harbor, Lord Mansfield held that the opinions of scientific men were admissible in evidence. This case is cited with approval by our own Supreme Court in Linn v. Sigsbee, 67 Ill. 75. See also, Buffum v. Harris, 5 R. I. 243; Porter v. Pequonoc M'f'g Co. 17 Conn. 249.

We are also of opinion that the court erred in instructing the jury that to entitle the plaintiff to recover, there must be proof of actual damage. If, by the erection of the dams and dikes the water was caused to flow upon the plaintiff's land, the law would imply nominal damages.

For the reasons above indicated, the judgment is reversed and the cause remanded for a new trial.

Reversed and remanded.