JULIA C. VOSE, PLAINTIFF IN ERROR, v. JOHN MULLER, DEFENDANT IN ERROR.

**Trial:** MISCONDUCT OF JURY. During the progress of the trial of the cause in the district court, while the court had adjourned for dinner, the defendant took two certain members of the jury in said cause, who were engaged in trying the same, into a public liquor saloon, and treated them to intoxicating liquors, which was then and there drank by said jurors: *Held*, That the verdict be set aside and a new trial granted.

ERROR to the district court for Cedar county. Tried below before CRAWFORD, J.

*Wilbur F. Bryant*, for plaintiff in error, cited: Thompson & Merriam on Jury, Sec. 372. *Brant v. Fowler*, 7 Cow., 562. *State v. Baldy*, 17 Iowa, 41. *Davis v. State*, 35 Ind., 496. *Sacramento Mining Co. v. Showers*, 6 Nev., 291.

*Barnes Brothers*, for defendant in error, cited: Hayne New Trials, Sec. 70. *Wilson v. Abrahams*, 1 Hill, 207. *Rowe v. State*, 11 Humph., 491.

COBB, J.

This cause was originally brought before a justice of the peace. The judgment there was for the plaintiff. Upon appeal it came before the district court of Cedar county, where there were new pleadings. The action was replevin of one heifer calf, the value of which was agreed by stipulation to be twenty-six dollars, which it was alleged by the plaintiff had strayed away from her possession, and was found in the possession of the defendant, and was claimed by him. There was a trial to a jury with a verdict for the defendant.

There was a motion by the plaintiff for a new trial, upon sundry grounds, among others, " For the misconduct of the jury and defendant in this, that during the progress of the trial of the cause, while the court had adjourned for dinner, on the 7th day of May, 1885, the defendant took certain members of the jury empaneled and sworn to try such cause, and engaged in the trial thereof, into a saloon in the town of Hartington, where said trial was being conducted, to-wit, the saloon of one Joseph Keppel, and then and there treated said members of said jury, to-wit, David Nelson and Henry Beckman, to intoxicating liquors," etc. Said motion was overruled and judgment for the defendant rendered on the said verdict.

The cause is brought to this court by the plaintiff in error, who assigns the following errors:

1. This court erred in overruling the motion of the plaintiff to strike the answer of the defendant from the files.

2. The court erred in allowing both the counsel for the defendant to examine the defendant's witness, John Cooper, against the plaintiff's objection.

3. The court erred in giving instruction number two on its own motion.

4. The court erred in refusing to give the first in-struction asked for by the plaintiff.

5. The court erred in overruling the plaintiff's. motion for a new trial herein.

Upon examination of the case and the several errors. assigned, I have reached the conclusion that there must be a new trial for error in the trial court in refusing a new trial. That assignment only will be examined. This assignment of error is based upon the eighth ground of error as contained in plaintiff's motion for a new trial. This ground was sustained by the following affidavit:

" In the district court of Cedar county, Nebraska.

"JULIA C. VOSE, *Plaintiff,* ⎫
     AGAINST      ⎬ Affidavit in support of mo-tion for a new trial.
JOHN MULLER, *Defendant.* ⎭

"Archibald Van Allen, of lawful age, being duly and solemnly cautioned and sworn to tell the truth, the whole truth, and nothing but the truth, deposes and says: That he is acquainted with the plaintiff and defendant in the above entitled cause; that affiant knows John Muller, the defendant in said cause; that during the progress of the trial of the above entitled cause, while the court had adjourned for dinner, on the seventh day of May, 1885, the said defendant, John Muller, in the presence of this affiant, took certain members of the jury, who were engaged in the trial of said cause, into a saloon in the town of Hartington, in said county and state, in which town said trial was in pro-gress, and then and there treated the said members of said jury, to-wit, David Nelson and Henry Beckman, to intox-icating liquors, the more particular kind and character of which are to this affiant unknown; that from appearance of such liquor, and the fact it was delivered in a whiskey glass, affiant believes such liquor to have been whiskey; that affiant knows said jurors, and states the above facts of his own knowledge; that affiant's attention was first called to the facts above set forth by one Lewis M. Howard, who,

at the time of the making of this affidavit, is absent from
the said town of Hartington, and his affidavit in support of
the facts above set forth cannot be procured in time for
the filing of the same with this motion.

"ARCHIBALD VAN ALLEN.

"Subscribed in my presence and sworn to before me
this 7th day of May, A.D. 1885.

"HENRY B. SUING,

[L. s.]                              "*Notary Public.*"

There was no denial of the facts stated in the above affi-
davit, by counter affidavits or otherwise.   Such facts must
therefore be assumed to be true, for the purposes of the
case.

The facts stated in the foregoing affidavit may be viewed
in two aspects.   *First,* As to the offering by the defend-
ant, and the accepting by the jurors from him, of a treat
while engaged in the trial or hearing of a cause in which
he was a party; and *Second,* As to the drinking of intox-
icating liquor *per se* by the juror while engaged in the
trial or hearing of the cause.

The question of the effect which misconduct of this char-
acter on the part of jurors will have upon their verdict,
has been before the courts of many of the states of the
Union as often as almost any one question, and it has given
rise to a great diversity of argument and opinion.   One
of the earliest American cases involving a question of this
character is that of *The People v. Douglas,* 4 Cow., 26,
which was tried in 1825.   The facts out of which the
question arose in that case were as follows: "The trial
commenced on the 11th of January.   At about 2 P.M.
the jury had liberty to retire from the box, under the
charge of two sworn constables and the direction of the
court to keep together and return speedily.   This was
before the trial was concluded.   The jury retired to con-
sider of their verdict about 11 P.M., and returned a verdict
of guilty about 4 the next morning.   After the conviction

a motion was made  *  *  *  for a new trial, on the ground that two of the jurors while out under the care of the constables separated from their fellows, ate, drank whiskey, put cakes in their pockets, and conversed with bystanders on the subject of the trial." A new trial being refused, the case .was brought to the court of errors. In delivering the opinion of the court, Woodworth, J., said: "Clearly we should disregard the fact of eating as forming any ground for setting aside the verdict; for though this might be a contempt of court, being without their leave, yet an opportunity to take reasonable refreshments would always be granted at a proper season, and the circumstances of their being obtained somewhat irregularly could not prejudice the prisoner. But here the doubt is, whether there was not further abuse in drinking spirituous liquors. This should not be tolerated in any shape in the jury during the progress of the trial, and we have uniformly held that it vitiated the verdict in a civil cause, even where the liquor was given to the jury by consent. It will not do to weigh and examine the quantity which may have been taken by the jury, nor the effect produced," etc. A new trial was granted.

The case of *Brant v. Fowler*, 7 Id., 562, was a civil case before the same court two years later. On the trial, after the judge had concluded his charge, several of the jurors requesting permission to go out, the judge told them they could go accompanied by an officer. One of them, misunderstanding the charge of the judge, while out separated himself from the officer and drank about one-third of a gill of brandy. The verdict was for the defendant. On motion in behalf of the plaintiff to set aside the verdict for the irregularity, the affidavit of the juror was produced, showing his mistake, and that he drank this small quantity of brandy to check a diarrhœa which he had incurred by drinking new cider, etc. In the opinion the court say: "We cannot allow jurors thus of their own head to drink

spirituous liquors while engaged in the course of a cause. We are satisfied that there has been no mischief, but the rule is absolute and does not meddle with consequences," etc.

The above two cases were criticised and distinguished, and in so far as they held that the mere drinking of spirituous liquors *per se* by the jurors was sufficient ground for setting aside the verdict, overruled by the case of *Wilson v. Abrahams*, 1 Hill, 207. But in denying the motion to set aside the verdict in the latter case, the court, by Bronson, J., laid considerable stress on the fact that in that case the liquors were not drank at the expense of a party to the suit. They say: "When in the course of the trial a juror has in any way come under the influence of the party who afterwards has the verdict, or there is reason to suspect that he has drank so much at his own expense as to unfit him for the proper discharge of his duty * * * the verdict ought not to stand."

In the case of *State v. Bullard*, 16 N. H., 139, decided in 1844, later in point of time than that of *Wilson v. Abrahams, sup.*, it appeared that about 8 o'clock in the evening the foreman of the jury, who had retired for the purpose of agreeing upon a verdict, applied to the officer in attendance, who furnished them meats and drink, including half a pint of new rum, which was drank by some of the jury who had complained of being unwell. The jury returned a verdict against the prisoner, it being a trial for larceny. A new trial was granted. The court, in the opinion, after citing the case of *People v. Douglas, sup.*, say: "And we are of the opinion that the use of stimulating liquors by a jury deliberating upon a verdict in a criminal case, without first showing a case requiring such use, and procuring leave of court for that purpose, is a sufficient cause for setting aside a verdict found against the prisoner in such circumstances, whether the use was intemperate or otherwise."

The case of *Davis v. The State*, 35 Ind., 496, came before the supreme court of Indiana in 1871. At the trial in the circuit court, " after the jury were charged and put in charge of a bailiff that they might consider of their verdict, the bailiff, with two of them, went to a liquor and billiard saloon, where other persons were drinking and playing billiards, and the bailiff procured for each of them 'a drink of brandy, ginger-wine, nutmeg and sugar,' which they drank, and which was paid for by one of them." This misconduct of the jurors, with other grounds, were set out in a motion for a new trial. The motion was overruled. In the supreme court, after citing to the point of the drinking of intoxicating liquors by the jurors, the cases of *Creek v. State*, 24 Ind., 151, *People v. Douglas, sup.*, *Brant v. Fowler, sup.*, *Wilson v. Abrahams, sup.*, *State v. Bullard, sup.*, *Jones v. State*, 13 Tex., 168, *Pelham v. Page*, 6 Ark., 535, *Gregg v. McDaniel*, 4 Harring. (Del.), 367, and *Commonwealth v. Roby*, 12 Pick., 496, the court reversed the judgment.

The case of *Ensign v. Harney*, 15 Neb., 330, came before this court on error to the district court of Lancaster county, on error for refusal to set aside the verdict and grant a new trial for misconduct on the part of the jury. The facts were, that during the progress of the trial, on Saturday at about 4 o'clock P.M., the court adjourned until the following Monday. Two of the jurors applied to one of the attorneys (for the defendant in error) for his horse and buggy to carry them home, a distance of about twelve miles, and return the following Monday. The attorney readily complied with their request. A verdict having been rendered for the defendant, a motion for a new trial was filed, in which this cause, among others, was assigned. The judgment was reversed and a new trial awarded. The court, in the opinion, said: "Where a juror is accepted as impartial, he must remain so during the trial. To permit him to accept favors from either party is to put him under ob-

12

ligations to such party, the tendency of which is to bias his judgment. Nor is it material that such favors were not intended to influence the juror, as it cannot be determined how far they may have had that effect; and such misconduct will vitiate the verdict." .

Where a juror during the trial spent the night at the house of one of the parties, and was entertained free of charge, a verdict in favor of such parties was set aside. *Walkers' Case*, 11 Ga., 203.

Where two of the jurors spent the night at the house of the counsel for the successful party, the verdict was set aside. *Walker v. Hunter*, 17 Ga., 414.

During a trial for robbery, one of the counsel for the prosecution, at the request of two of the jurors, *kept their horses over night* for them without charge therefor; a verdict against the prisoner was set aside.    *Springer v. State*, 34 Ga., 381.

Where, during a trial, several of the jurors went to a restaurant kept by a person who was chiefly interested in the verdict, and there partook of refreshments, for which they neither made, nor were asked to make, compensation, the verdict was set aside. *Redman v. Royal Insurance Co.*, 7 Phil., 167.

Where, during a trial, a juror and other persons went to a neighboring tavern, and while there the juror ate and drank at the expense of the plaintiff, and some calculations were made by the juror in the presence of the plaintiff respecting the amount of the verdict, a new trial was granted. *Keegan v. McCandless*, 7 Phil., 248.

In the case at bar the intoxicating liquors were furnished to the jurors and paid for by the party to the suit in whose favor the verdict was rendered. The question of the unauthorized drinking of intoxicating liquors *per se* by the jurors does not properly arise. If it did, speaking for myself alone, I would not hesitate to hold it sufficient to vitiate the verdict. But where, as in this case, the liquor

is received as a treat at a public bar, by a juror engaged in the trial of a cause, from a party to the suit, and drank by the juror as such, it cannot be doubted that a verdict following such misconduct, and which necessarily rests under the suspicion of having been influenced thereby, should be set aside.

The judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.

THE other judges concur.