## GARVIN v. HARRELL.

No. 617.   Opinion Filed November 16, 1910.

1. PLEADING—Particularity—Justice Courts. The same degree of particularity, in pleadings, is not required in actions before a justice of the peace that is required in courts of record and a pleading that is sufficient in a justice's court, is sufficient in the appellate court where the cause is tried de novo, upon appeal

2. FRAUD—False Representations. A party is guilty of fraud and deceit where, with intent to induce another to enter into a contract, he makes a positive assertion, which is material, in a manner not warranted by his information, or where he is not shown to have reasonable grounds for believing it true, where the assertion so made is not true, even though believed by the party making it. In such a case the definite assertion as a fact of that which is untrue, concerning that which the party has no knowledge, is tantamount to the assertion of something which the party knows to be untrue.

3. NEW TRIAL—Misconduct of Jury—Treating Jurors. The verdict of a jury in favor of a party will be set aside where, after the empaneling of the jury and before verdict, he treats or entertains the same or any member thereof.

4. SAME—After the jury has been selected and sworn to try the issues in the cause, the successful plaintiff entertained at dinner at his expense three jurors at a restaurant kept by a fourth juror; a motion for new trial setting this up as one of the grounds was denied. Held, error.

(Syllabus by the Court.)

*Error from Sequoyah County Court, W. N. Littlejohn, Judge*

Action by S. A. Harrell against Ben F. Garvin. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

*T. F. Shackelford,* for plaintiff in error.

DUNN, C. J. This case presents error from the county court of Sequoyah county. It was tried originally on a bill of particulars filed before one of the justices of the peace of that county. After trial, appeal was taken to the county court, and a trial *de novo* had before a jury, which resulted in a verdict for plaintiff, defendant in error in this court. Motion for new trial was filed and denied, and the case has been regularly brought here for review by petition in error and case-made.

It is insisted by plaintiff in error, who was defendant in the trial court, that the court erred in overruling a demurrer to plaintiff's bill of particulars and in denying a motion to make the same more definite and certain. Without setting out the bill of particulars, we will say that, had the action fallen within the jurisdiction and been filed in the district court and governed by that procedure, there might perhaps be some merit in the pleas filed, but being a case within the jurisdiction of a justice of the peace, the rules of pleading are far less strict than in the district court. The rule obtaining was announced by the Supreme Court of the territory of Oklahoma in the case of *Brewer & Stannard v. Black,* 5 Okla. 57, as follows:

"The same degree of particularity, in pleadings, is not required in actions before a justice of the peace, that is required in other courts. It is sufficient if the bill of particulars states, in a plain and direct manner, the facts constituting the cause of action or the claim to be set off; and a pleading that is sufficient in a justice's court is sufficient in the district court, where the cause is tried *de novo* upon appeal."

See, also, *Honnold's Justice,* sec. 175, p. 91.

The bill of particulars filed sets out in ordinary language the fact that the parties plaintiff and defendant made an exchange of mules, and that the defendant fraudulently represented his mule

to be sound and all right and caused the plaintiff to believe and rely upon such representations; that they were made by the defendant knowing them to be false and knowing that the mule was diseased with the glanders, or some similar ailment, but that the mule was wholly worthless; whereupon plaintiff averred he was damaged in the amount of $196.00. This pleading in our judgment was sufficient, and the court committed no error in overruling the demurrer and denying the motion.

Counsel next complains of the admission of certain evidence, which it is contended involves both hearsay and conclusions, and which is not confined to statements of facts within the knowledge of the witnesses. We have considered the evidence complained of, and, while in no wise sanctioning or approving the admission of all of it, yet, if it were the only defect in the trial, it would hardly be error prejudicially sufficient to effect a reversal; for, considering the whole case, in our judgment the verdict returned would have been the same, notwithstanding the errors complained of in regard to the incompetent testimony. We do not regard it necessary to further notice the same, believing that on another trial counsel for plaintiff will eliminate the objectionable features.

Exceptions are likewise taken to certain instructions given, requested, and refused, involving the gravamen of the bill. A reading of the instructions shows them to be somewhat involved, a portion being in fact too favorable to the defendant, while other parts are more favorable than plaintiff was entitled. The rule fixing the measure of proof required to establish deceit is that a party is guilty where, with intent to induce another to enter into a contract, he makes a positive assertion which is material in a manner not warranted by his information, or where he is not shown to have had reasonable grounds for believing it to be true, where the assertion so made is not true, even though believed by the party making it. In such a case the definite assertion as a fact of that which is untrue concerning that of which the party has no knowledge is tantamount to the assertion of something which the party knows to be untrue. Our statute on this matter is clear and ex-

plicit. Sec. 14, art. 1, chap. 15 (par. 743), Wilson's Revised and Annotated Statutes of Oklahoma, 1903, sec. 1052, Compiled Laws of Oklahoma 1909, provides:.

"Actual fraud, within the meaning of this chapter, consists in any of the following acts, committed by a party to the contract, or with his connivance, with intent to deceive another party thereto, or to induce him to enter into the contract: 1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true. 2. The positive assertion in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true. * * "

Sec. 105, art. 5, c. 15 (par. 834), Wilson's, etc., Stats., sec. 1144, Comp. Laws of Oklahoma, 1909, provides:

"One who wilfully deceives another, with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers."

And sec. 106, art. 6, c. 15 (par. 835), Wilson's, etc., Stats., sec. 1145, Compiled Laws of Oklahoma, 1909, provides:

"A deceit, within the meaning of the last section, is either: First, the suggestion, as a fact, of that which is not true, by one who does not believe it to be true. Second, the assertion as a fact of that which is not true, by one who has no reasonable ground for believing it to be true. * * *"

On another trial of this cause, the rule adduced from the foregoing statutes as laid down in *Howe v. Martin*, 23 Okla. 561, 102 Pac. 128, should be the guide for the instructions to the jury, and by following it there need be no error.

One of the grounds of the motion for new trial is misconduct of the jury and prevailing party. In support of this an uncontroverted showing was made that after the jury for the trial of the cause was empaneled, and during the noon recess, the plaintiff took John Keith and W. L. Patrick, jurors in the cause, to a restaurant kept by John Hoggard, another one of the jurors, and after arriving there, W. R. Griffity, another of the jurors, entered, and that the plaintiff paid for the dinners of all of said jurors. The court refused to set aside the verdict and grant a new trial on this showing, and this is alleged as one of the errors. We believe, without

exception and uniformly, the courts of this country have held conduct of this character on the part of the prevailing party sufficient to avoid the trial. See authorities noted in 29 Cyc. 803 and Thompson on Trials, sections 2560 and 2564. Instances of, and the grounds on which the rule has been applied where the entertainment was furnished the jurors by the successful party during the trial, may be noted as follows: *Marshall et al. v. Watson,* 16 Tex. Civ. App. Rep. 127 (plaintiff paid for the dinners of two jurors); *Walker v. Walker,* 11 Ga. 203 (one of the jurors spent a night at the home of the successful party); *Walker, Ex'r, v. Hunter et al.,* 17 Ga. 364, 414 (counsel for the successful party entertained at his house two of the jurors); *Redmond v. Royal Insurance Co.,* 7 Phila. 167 (several jurors received entertainment at a restaurant kept by a person interested in the result of the verdict); *Ensign v. Harney,* 15 Neb. 330, 18 N. W. 73 (counsel for successful party loaned his buggy to two jurors Saturday night on the adjournment of court, that they might use it in going to their homes and returning Monday morning); *Vose v. Muller,* 23 Neb. 171, 36 N. W. 583 (successful party, during adjournment of court, treated two jurors to drink); *Perry v. Bailey,* 12 Kan. 539 (juror drank liquor at expense of successful litigant); *Huston v. Vail et al.,* 51 Ind. 299 (successful party purchased food and drinks for several jurors); *Bender v. Buehrer,* 8 Ohio Circuit Court Rep. 244 (successful party furnished cigars and drinks to juror while making a view of premises); *Johnson v. Hobart et al.,* 45 Fed. 542 (no provision was made by law for furnishing meals to the jury and counsel were by the court asked, if it became necessary to give the jury refreshments, whether the parties would share the expense; defendant's counsel declined to do so; meals were furnished by counsel for plaintiff); *Doud v. Guthrie et al.,* 13 Ill. App. Rep. 653 (on plaintiff refusing to divide expenses of conveying jury to make a view, defendant volunteered to do so, furnishing conveyances and also entertainment for jury); *Lyons et al. v. Lawrence,* 12 Ill. App. Rep. 531 (producing in court and offering refreshments to jury by successful party); *Palmer et al. v.*

*Utah & N. Ry. Co.,* 2 Idaho, 290 (father of successful party patronizing excessively saloon owned by one of the jurors); *Burke et al. v. McDonald et al.,* 2 Idaho, 1022 (entertaining jury with food, beer, and cigars, while making a view).

In the case of *Springer v. State,* 34 Ga. 379, one of the counsel engaged in the prosecution kept for the night, free of charge, the horses of some of the jurors. In setting aside the verdict returned, the Supreme Court of that state said:

"We are thoroughly persuaded that the associate counsel for the state was solely actuated by his generous nature, in yielding to the request of the jurors engaged in the trial of the criminal cause brought up for review; and we give credit also the affidavits of the jurors, that their verdict was entirely uninfluenced by anything but the testimony."

And, referring to the case which we have noted above, *Walker, Ex'r, v. Hunter' et al.,* the court, continuing, said:

"So, too, in the Hunter will case, no man who knew Col. Crocker, one of the attorneys for the executor, would make the slightest imputation, at any time, on either his personal or professional conduct, yet, the verdict in favor of his client was set aside, because he had allowed a juror to dine at his table whilst the case was being tried. The same reason which led this court to grant a new trial in that case, induces it to direct one in this. The honor of the bar and the perfect purity of a jury alike demand their entire separation in their personal and social intercourse, whilst trials are progressing. However harmless, in themselves, as was the conduct of our respected brethren in these cases, we feel ourselves called upon, in this and in every case where this separation is not preserved with the utmost care, to evince in the most decisive manner, our purpose to shut up every avenue through which corruption, or the influence of friendship, could possibly make an approach to the jury box."

In the case of *Drake v. Newton,* 23 N. J. Law, 111, the trial took place at an inn, and, prior to the conclusion of the trial, supper was prepared, at which the jurors sat, and the expenses of it, as to most of them, was defrayed by the successful party. The court, in its deliberation on these facts, said:

"The supper was in fact furnished to the jurors before they

retired to deliberate on their verdict, and the expense defrayed by the complainant. Not only did this occur, but immediately on the rendition of the verdict, if not before, the complainant was guilty of the great impropriety of treating the jurors with liquor, as if in reward for the verdict just rendered. We wish to express our disapprobation of such practices, which are calculated to bring suspicion and reproach upon the administration of justice in those courts in which they occur. It is the duty of the court to hold a strict rein over the conduct of parties, and to guard the purity of the trial by jury with the utmost circumspection. A party must not be permitted, directly or indirectly, to prepossess the minds of jurors by unusual civilities, or in any other mode, during the progress of the trial. The offer of such attentions at its close, and the exceptions created by the practice, can scarcely be considered less dangerous and reprehensible."

The Supreme Court of Nevada, in the case of *Sacramento & Meredith Mining Co. v. Showers et al.,* 6 Nev. 291, dealing with this same question, which arose by the successful party treating the jury on the occasion of its repairing to the premises for view, in announcing the rule that new trials would be granted for such conduct, said:

"The rule applies to any treating, of any jury, at any time after they are sworn, and before they agree upon their verdict, whether once or several times, by design or inadvertently, in the presence of the officer or in his absence, and whether we might deem it called or uncalled for by the proprieties of life. And there is no hardship or undue severity in this rule. If the prevailing party is put to the expense and vexation of a second trial, he can blame no one but himself. It is simply enjoined upon him to refrain from intermeddling with the jury, to keep aloof from them during the progress of the trial, and to see that his attorneys and agents do the same."

The Supreme Court of Maine, in an opinion delivered nearly one hundred years ago, *Cottle v. Cottle,* 6 Me. 140, dealing with this question, which arose by the successful party taking one of the jurors several miles in his (the party's) sleigh to the house of a friend, where he was hospitably entertained for the night, said that "it may be useful to the party to learn that a good cause may be injured, but cannot be promoted, by conduct of this sort, and

to the public generally, to know that it will be tolerated in no case whatever."

A lawsuit is, at its best, a misfortune, yet, when a citizen feels that his rights have been invaded and other means have failed, it is the only method prescribed by the law of the land for the vindication thereof and the administration of a remedy. He is denied the privilege of seeking and forcing redress by his own strong arm and compelled to resort to the established tribunals for remedy. A resort to law is usually at the unsuccessful conclusion of all other efforts for adjustment, and all parties confidently appeal to the courts with the abiding conviction that they are right and that justice will be administered unpolluted and exact. It is essential to the well being of society that this confidence be encouraged and sustained and that the faith of the people in the courts be not shattered. In order that this may be so, the jury, the trial and all the proceedings connected with them should not only be free of wrongdoing, but their administration should be so untainted, free, clear and above board that there will be no room for suspicion that the conclusion reached was influenced by other matters than an unbiased consideration of the law and the evidence, and this considered and applied by an honest, upright judge and jury. The fair and impartial jury, duly empaneled, sworn and charged to try the cause and true deliverance make, has been the bulwark of the best system yet devised by man for the determination of controverted questions of fact, and our people are content and feel secure in their persons and property because of their abiding confidence in its integrity. When the unfortunate parties, then, unable to settle their own differences, leave them to the judgment of a court and jury, the result should come to them both untainted by a breath of suspicion that aught else than the law of the land and their evidence was even remotely responsible for the verdict. In this case we may absolve the plaintiff from any intention whatsoever to corruptly influence the jury by the courtesies which he extended to some of its members, and we may absolve the jurors of a suspicion on our part that their verdict was

responsive to aught else than the law and the evidence as delivered by the court and the witnesses; but the defendant evidently does not maintain this view, and he has a right, of which he cannot lawfully be deprived, to have the facts of his case determined by a jury upon which the possibility of undue influence has not been exerted. It therefore follows that, for this reason, the motion for a new trial should have been sustained, and its denial was error.

The judgment is accordingly reversed, and the cause is remanded to the county court of Sequoyah county, with instructions to set aside the verdict and judgment heretofore rendered and grant defendant a new trial.

All the Justices concur.