Eddie Lee WHITEHEAD, Appellee,

v.

CITY OF TULSA, a Municipal Corporation, and Mark Andrew Andrus, Appellants.

No. 52990.

Supreme Court of Oklahoma.

July 1, 1980.

Paul E. Vestal, Tulsa, for appellee.

Waldo F. Bales, City Atty. by Robert L. Roark, Asst. City Atty., Tulsa, for appellants.

DOOLIN, Justice:

As a result of an automobile accident involving defendant Andrus, a police officer for the City of Tulsa (City), plaintiff filed the present suit for damages in the amount of $8,660.35. City counterclaimed for $770.02 for damages to the police car.

The case was tried to a jury under Oklahoma's comparative negligence statutes, 23 O.S. 1976 Supp. § 11. Neither party objected to the court's instructions or to the form of the verdict.

During deliberations several inconsequential notes were slipped under the door to the bailiff by the jury foreman. After over three hours of deliberation another note was slipped under the door. It stated:

"Have agreed that Mr. Whitehead is 49% negligent & defendants are 51% negligent. Further, we would like Mr. Whitehead to received, (sic) in hand, $4500.00. Do not know how to complete form. (signed) K. E. Feirer, Foreman."

In response and with agreement of counsel, the trial judge sent a note back to the jury stating he had given all the instructions he could.

Soon thereafter the jury returned the following verdict:

"We, the jury, empaneled and sworn in the above-entitled cause, do upon our oaths, find as follows:

| | | |
|---|---|---|
| 1. Defendants' negligence | (0%) to (100%) | 82 |
| 2. Plaintiff's negligence | (0%) to (100%) | 18 |
| | Total | 100% |

The following shall be answered only if the percentage of plaintiff's negligence is of a lesser percentage than the negligence of the defendants;

3. We find the total amount of damages sustained by the plaintiff, disregarding the percentages of negligence of the defendants and plaintiff, in the sum of: $5,500.00

The following shall be answered only if the percentage of cross-petitioner's negligence is of a lesser percentage than the negligence of the plaintiff:

4. We find the total amount of damages sustained by the cross-petitioner, disregarding the percentage of negligence of the plaintiff and defendants, in the sum of: $_____

Upon the above jury verdict, the Court found as follows, to-wit:

| | | |
|---|---|---|
| 1. For Plaintiff: | | _____ |
| Total damages disregarding the percentage of negligence | | $5,500.00 |
| Less percentage of plaintiff's negligence | | $ 990.00 |
| Net to Plaintiff | | $4,510.00 |
| 2. For Defendant | | _____ |

The court polled the jury at defendants' request and each juror affirmed the verdict. The jury was then dismissed and the court adjourned. Defendants' motions for new trial and judgment notwithstanding the verdict were overruled and they appeal.

Defendants' sole proposition on appeal claims the jury's verdict was contrary to and in total disregard of the court's instructions pertaining to the application of the doctrine of comparative negligence.

█ The verdict returned by the jury was in proper form and on its face could not be challenged. Defendants submit the note written by the foreman prior to the verdict must be considered in determining whether the verdict was a result of sound judgment, dispassionate consideration and conscientious reflection as required by *Cities Service Oil v. Kindt*, 200 Okl. 64, 190 P.2d 1007 (1948).

In that case plaintiff sued Cities Service and Richison, an operator of one of its service stations. Judgment was for plaintiff. On appeal this court reversed the judgment against Cities Service holding plaintiff had failed to establish that Richison was Cities Service's agent, servant or employee; therefore trial court had erred in overruling Cities Service's demurrer to plaintiffs' evidence. Additionally, the Court reversed the judgment against Richison, finding verdict was improper, and granted him a new trial based on the following discussion:

"Defendants complain that the verdict returned to the court and upon which judgment was rendered was not the verdict that the jurors intended to return. After the verdict was received into court the foreman of the jury stated to the court that the jurors had signed the wrong verdict, he thought. Another juror stated it was his idea to find against Cities Service but not against defendant Richison. The court inquired of the jurors if any of the others had the same idea, to which question one juror answered, 'We all did.' The court then instructed the jury that it could find for Cities Service and against Richison, but that if it found against Cities Service, Richison would be liable as a matter of law. He then instructed the jurors as follows: 'Reconsider it and if you want to re-submit this verdict, do so. If you don't, make up the one you want to submit.'

After retiring for ten minutes, the jury returned the same verdict. Each juror was then polled by the court individually, and the eleven jurors who signed the verdict each stated that it was their verdict.

The attack on the jury's verdict in the instant case, differs materially from the ordinary attack on a jury verdict in that the conduct of the jury occurred at the time that the verdict was returned to the court and was in the presence of the court and was presented by the jury at that time to the trial judge, and our discussion will be confined to that type of case which occurs in the presence of the court at a time when the verdict is being returned by the jury, and such discussion will not necessarily apply to a case involving testimony and statements made by jurors after their verdict has been received and filed.

There can be no question but that the jurors did not intend to find against the defendant Richison when they first returned their verdict against both defendants, yet within ten minutes after it was disclosed that they had not intended to return a verdict against the defendant Richison, they again returned a verdict holding both defendants liable, despite the fact that no additional evidence was submitted or any additional instructions given them by the court except a reiteration of an instruction formerly given them to the effect that in order to find the corporate defendant liable, it would be necessary to also find the defendant Richison liable.

We have herein held that the trial court should have sustained Cities Service's demurrer to plaintiff's evidence. It is probable that had said demurrer been sustained and the trial continued as against the defendant Richison alone, the jury would have returned a verdict in his favor.

We have hereinbefore discussed the weakness of plaintiff's evidence concerning liability, and it is our opinion that the only reason the jury changed their minds

as to the liability of the defendant Richison was in order to hold the corporate defendant liable.[1] "

Defendants submit this decision allowing a verdict to be impeached by conduct at the time verdict was returned and in the presence of the court, requires consideration of the note in determining the intent of the jury.

■ Generally it is improvident to accept an ambiguous or clearly defective verdict.[2] In this case, even considering the "note", defendants' allegations are pure conjecture. There is no basis for defendants' assertion that jury arrived at the percentage of negligence by working backwards from an arbitrary damage figure. Because the percentages of negligence were not in multiples of tens, does not make the verdict suspect, as argued by defendants.

■ The note has no significance in determining the jury's intent. A jury may change its mind any time before the verdict is rendered. Evidence of intent of the jury is not admissible to impeach a verdict,[3] and it would be error for trial court to have granted a new trial based on speculation of defendants as to this intent.

This is not a situation comparable to that in *Cities Service v. Kindt, supra,* where court questioned the jurors before rendition of judgment. Here defendants are premising their demand for a new trial on an impeachment of a verdict, correct on its face.

Trial court committed no error in its denial of a new trial.

AFFIRMED.

HODGES, SIMMS, HARGRAVE and OPALA, JJ., concur.

LAVENDER, C. J., IRWIN, V. C. J., and WILLIAMS and BARNES, JJ., dissent.

BARNES, Justice, dissenting:

I must dissent from the majority opinion for the following reasons:

The factual basis for the majority opinion is that "There is no basis for defendants' asserting that jury arrived at the percentage of negligence by working backwards from an arbitrary damage figure." Relying upon the possibility that the jury may have changed its mind before the verdict was rendered, the majority finds that the jury's inquiry of the Court made prior to the issuance of its verdict was not significant. I disagree.

In its inquiry to the Court, the jury indicated that it had found Mr. Whitehead 49% negligent and the defendants 51% negligent. Further, the jury indicated that it wished Mr. Whitehead to receive the sum of $4,500.00, but did not know how to complete the form to reach this result. Upon being apprised that the Court could not further instruct the jury, the jury reached the result it wished by awarding Mr. Whitehead $4,510.00. The fact that the jury indicated this was the result it wished to reach, the fact that it was the result reached and the fact that the percentages of negligence were changed in order to reach that result are, in my estimation, sufficient indications that the jury did not follow the instructions to the Court relating to comparative negligence.

I do not believe that the glaring similarity between the announced intent of the jury and the result reached was a mere coincidence. The amount of damages sued for was $8,666.35. If the percentage of negligence found to be present at the time the jury made its inquiry to the Judge, 51%, were applied to the amount sued for ($8,666.35 × 51%), the amount of damages would have been $4,386.18. However, the jury found that the total damages were $5,500.00. If we were to apply the same 51% negligence figure to that amount of

1. *Cities Service Oil Co. v. Kindt,* supra, at pages 1012, 1013.

2. See *Burkett v. Moran,* 410 P.2d 876 (Okl. 1966); *First National Bank and Trust Company, Muskogee v. Exchange National Bank and Trust Co., Ardmore,* 517 P.2d 805 (Okl.App. 1973).

3. See *Holden v. Coussens,* 576 P.2d 758 (Okl. 1978).

total damages ($5,500.00 × 51%), the judgment would have been much less, $2,805.00. Thus, it is obvious to me that the jury, in order to reach its announced intention of awarding damages of $4,500.00 merely changed the negligence figures—this time finding the defendants 82% negligent. When this new found degree of negligence is applied to the total amount of damages found ($5,500.00 × 82%), the judgment arrived at, $4,510.00, comes within a hair of the jury's announced intention to award $4,500.00.

The Majority Opinion holds that the jury's finding that the defendants were 82% negligent—an increase of over 30% from the jury's original "finding"—was the result of a mere change of heart. As difficult as that argument is to accept, it becomes almost impossible to accept it when this degree of negligence is applied to the total damages found, and one sees that the jury awarded almost the exact amount of damages the jury wished to award when it originally found the defendants to be only 51% negligent. Although no positive proof of the jury's misconduct is possible, the figures alone strongly indicate misconduct on the jury's part. I think such evidence more than justifies the granting of a new trial.

The view embraced by the Majority would virtually make it impossible to reverse a verdict in which impropriety on the jury's part was obvious. I would not, unlike the Majority, require exact proof of the jury's misconduct. Evidence strongly indicating misconduct should be sufficient.

In *Garvin y. Harrell*, 27 Okl. 373, 113 P. 186 (1910), this Court, speaking through Chief Justice Dunn, stated:

"A lawsuit is at its best, a misfortune, yet when a citizen feels that his rights have been invaded and other means have failed, it is the only method prescribed by the law of the land for the vindication thereof, . . A resort to law is usually at the unsuccessful conclusion of all other efforts for adjustment, and all parties confidently appeal to the courts with the abiding conviction that they are right and that justice will be administered unpolluted and exact. It is essential to the well-being of society that this confidence be encouraged and sustained, and that the faith of the people in the courts be not shattered. In order that this may be so, the jury, the trial, and all the proceedings connected with them should not only be free of wrongdoing, but their administration should be so untainted, free, clear, and above board that there will be no room for suspicion that the conclusion reached was influenced by other matters than an unbiased consideration of the law and the evidence . . .. the result should come to them both untainted by a breath of suspicion that aught else than the law of the land and their evidence was even remotely responsible for the verdict."

In the case at hand, the action of the jurors makes the verdict reached by them strongly suspect—this alone should be sufficient to warrant a new trial. Accordingly, I would hold that the trial court erred in refusing to grant such relief.

I am authorized to state that LAVENDER, C. J., IRWIN, V. C. J., and WILLIAMS, J., join in this dissenting opinion.