WARREN A. WELLS *et al.*

*v.*

JOHN BOURDAGES.

*Opinion filed December 18, 1901.*

1. MASTER AND SERVANT—*servant may assume that foreman's directions as to his safety will be obeyed.* A servant employed as an ordinary laborer, who is directed by his foreman to repair machinery upon the understanding that it would not be started until he notified the parties in charge that the repairs were completed, has the right to assume that the foreman's instructions against starting the machinery will be observed by those under him.

2. SAME—*effect of servant's knowledge of danger attendant on his performing special work.* A servant's knowledge of the danger attendant upon his performing special work at the master's order will not defeat his right of recovery for injuries, if, in obeying the master's command, he acted with that degree of prudence that an ordinarily prudent man would have used under the circumstances.

*Wells v. Bourdages*, 88 Ill. App. 473, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. M. KAVANAGH, Judge, presiding.

O. W. DYNES, for appellants.

.E. S. CUMMINGS, for appellee.

Mr. JUSTICE RICKS delivered the opinion of the court:

This is an appeal from the Appellate Court for the First District, affirming a judgment for $4800 in favor of appellee for personal injuries received while acting as a servant and in the employ of appellants. The declaration contained two original counts and one additional count. The court instructed the jury, as to the first count, to find for the defendant, and the verdict was on the second and additional counts.

The appellants were engaged in renovating an eight-story building in Chicago, and the appellee was in their employ as a laborer. The work began at the top, and the brick and other material were lowered by a steam elevator having two platforms, which were so adjusted that as one ascended the other descended. The negligence charged in the second count was, in substance, that defendants did not use due care and diligence in and about the construction and maintenance of said elevator shaft or opening, but, on the contrary, negligently, carelessly and improperly constructed the same, and while plaintiff was working in said elevator shaft and using due care the defendants carelessly and negligently placed on said elevator, at the eighth floor of said building, a wheelbarrow loaded with bricks, and they also then and there carelessly and negligently proceeded to move and operate said elevator, and by reason of improper construction of the elevator shaft, and by reason of placing said wheelbarrow upon said elevator, and by reason of said operation of said elevator, said wheelbarrow loaded with bricks was then and there upset and overturned and was thrown down upon the plaintiff, etc. In the additional count the charge of negligence was that defendants carelessly and

negligently, and without the knowledge of the plaintiff, placed upon said elevator, on the eighth floor, a wheelbarrow loaded with bricks, and by reason thereof, and when appellee was on said elevator, said bricks fell from said elevator down to and upon the plaintiff, who was then and there working upon said elevator, and struck the plaintiff with great force, etc.

At the close of all the evidence appellants offered a peremptory instruction directing the jury to find for the defendants, and requested the court to give it, which the court refused to do. While there are many errors assigned, the one for refusing this instruction is the only one we are authorized to consider, as all others relate to mere questions of fact and weight of evidence.

The evidence in this case shows that the elevator which was being used was operated by one Frazer, the engineer, whose duty it was to start and lower the same upon signals, by ringing a gong,—one stroke to start the machinery and three strokes to lower a load. The gong was so wired and connected with the elevator shaft that it could be rung from any floor of the building. The elevator platforms were narrower than the wheelbarrows were long, and the opening or shaft was purposely made larger so as to allow wheelbarrows, when placed on the platform, to have their handles project over the edge and pass without obstruction. On each floor a single heavy board was so attached that it extended out even with the elevator platform, so that the wheelbarrow might be conveyed over it to the platform. This shaft had been used for some time and was considerably out of repair. The guides which held the platform in place in its journeys up and down had become loose and unsafe, and the gong not acting properly, it was deemed necessary by one Stesler, general foreman for appellants, to have it repaired. Appellee was working on the top or eighth story under a sub-foreman named Castor, who was having his men place the brick, get them close to the ele-

vator way and load them in the barrows on the elevators for lowering. Stesler, the foreman, directed the appellee, who, it appears from the evidence, was a man of more than ordinary capacity and had some skill and knowledge in repairing elevators, and which the evidence shows Stesler knew, to quit his work under Castor and repair the elevator. He directed him, when the elevator was in condition for operation, to notify him (Stesler) and also to notify Castor, so that he might proceed with lowering material, which was necessarily suspended during the repairs. Appellee had fixed the guides in place and got the wire for the gong adjusted and attached at the several floors, and was at the top of the building where Castor was, nailing on one of those boards projecting to the platform, after which he started to the second floor, carrying his saw and hammer, to fasten another of those projecting planks so that the wheelbarrows loaded with brick and coming from the floors above could be taken off the elevator at that floor. As he was working on the elevator and had ridden up on it as his work progressed, he started with his tools to ride down, but Frazer, who operated it, did not seem to have noticed that it was to stop at the second floor and brought him down to the first floor. He called Frazer's attention to this, and Frazer started to send him back on the elevator to the second floor. When he had descended to the first floor, and while talking to Frazer about going back to the second floor, Castor, without having been notified by him or by Stesler to do so, ordered one of his men to put a barrow loaded with brick on the platform that was up at that floor, which he tried to do, and the elevators started immediately,—the one with the brick down and the one with the appellee up. Nelson testified that he attempted to place the wheelbarrow on the elevator, but the latter started so suddenly that the cross-bar of the descending elevator caught and turned over the wheelbarrow, or in some way it was turned over, so that the

bricks fell down the elevator shaft, striking and seriously injuring the appellee.

Stesler, the foreman, testified that he hired the men and was general manager of the work then progressing; that he hired appellee, whom he had known for ten or twelve years, and knew that he was thoroughly competent and acquainted with the repairing of hoisting elevators, and that he directed him to put the elevator at the building in question in shape and to place the guides in proper condition; that Castor, the sub-foreman, had just come to that building that morning, and that he (Stesler) had assigned Castor to work on the eighth floor, and told him that appellee would fix the elevator and that he was well acquainted with the machine; that when material was to be lowered a man was directed to stand by the elevator and wheel the loads on, then step off and give the signal to lower; that he assigned Nelson to do that work, but that Nelson was not to do it until he was notified that the elevator was in running order; that he told Frazer, the engineer, that appellee was repairing the machine, and that appellee would let the engineer and foreman know when he got through. It also appeared in evidence that appellee had worked from seven to nine years for a firm whose business it was to erect this sort of elevator; that when appellee was injured, just about the time the machine was started, the gong sounded one stroke.

Such was the case made by the appellee's witnesses. There was some testimony contradicting part of the material things testified to in appellee's behalf. It is not our province, however, to weigh the testimony or to determine where the truth of it lies. We are only required to look into it sufficiently to see if there is evidence fairly tending to establish a cause of action. If there is, then the court properly refused to give the instruction asked. (*Chicago Edison Co.* v. *Moren,* 185 Ill. 571.) Here the appellee, employed as an ordinary laborer, was directed

by the foreman to do a special and somewhat hazardous work, with the understanding that he should notify the foreman, the engineer and sub-foreman when this work was completed and they could proceed with the use of the elevator.   While pursuing such work he had a right to assume that the instructions of the foreman would be observed by those under him, and that he would not be exposed to unnecessary peril while so engaged.   (*Illinois Steel Co.* v. *Schymanowski,* 162 Ill. 447.)   And we have held that where a servant, in obedience to a command from one having authority, is performing an act the performance of which is attended with a degreè of danger, it is not required that the servant shall balance the degree of danger and decide with absolute certainty whether he must refrain from it; and his knowledge of the attendant danger will not defeat his right of recovery, if in obeying the command of the master he acted with that degree of prudence that an ordinarily prudent man would have used under the circumstances.   (*Chicago Anderson Pressed Brick Co.* v. *Sobkowiak,* 148 Ill. 573; *Chicago Edison Co.* v. *Moren, supra.*)   There is nothing in this evidence to show that appellee should or might, by the exercise of reasonable care, have anticipated that the sub-foreman, Castor, would direct the work of lowering brick to be proceeded with until he was notified by appellee or the foreman to do so.

From a careful examination of the evidence in this case we are satisfied that the trial court did not err in refusing the peremptory instruction asked, and that the judgment of the Appellate Court ought to be, and the same is, affirmed.

Appellee insists that the appeal was for delay and that the case should be affirmed with statutory damages. From a review of the case and a consideration of the questions raised we are unable to say the appeal was for delay, and the damages are denied.

*Judgment affirmed.*