## American Brake Shoe and Foundry Company, a corporation, v. Charley Jankus.

### Gen. No. 11,866.

1. INTERPRETER—*when discretion of court in selecting, will not be reversed.* The action of the court in selecting a particular interpreter will not be held as ground for reversal unless injury appears to have resulted.

2. PERSONAL INJURIES—*right of juror to examine.* Where a party is permitted to exhibit his injuries to the jury, it is not error to allow a juror to take hold of the plaintiff's arm and move it up and down to ascertain for himself the extent and nature of the injury complained of.

3. SUDDEN DANGER—*duty of servant when confronted with.* A servant suddenly confronted with danger is not required to act with the same deliberation and foresight which might be required of him under ordinary circumstances, where he would have time for deliberation.

4. SERVANT—*when does not assume risk arising from defect known to him.* Notwithstanding a servant knew of the defect which caused his injury, if the master ordered him to proceed with the dangerous work, he does not assume the risk of so doing unless the danger was so imminent that a person of ordinary prudence and caution would not have incurred it.

Action on the case for personal injuries. Appeal from the City Court of Chicago Heights; the Hon. HOMER ABBOTT, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1904. Affirmed. Opinion filed June 20, 1905.

**Statement by the Court.** This action was brought by appellee against appellant to recover damages for a personal injury sustained by appellee while in the employ of appellant at its factory in Chicago Heights, Cook county, Illinois, on or about April 17, 1903.

Appellee had been in the employ of appellant about two years at the time of the accident. He was employed by appellant to operate a machine known as a "rattler" or "dum box" which was used in cleaning castings. The construction of this machine and its operation is shown by a cut offered in evidence. The rattle box proper consists of the end pieces commonly called "rattler heads," and the pieces of cast iron

connecting these end pieces corresponding to the staves of a barrel and called "rattler staves." These staves weigh from 365 to 375 pounds each, and are fastened to the end pieces or "rattler heads" by three-quarter inch bolts passing through the rim of the "rattler heads," and through slots in the end of the staves. Upon the upper ends of the bolts are threads by means of which nuts are screwed down upon the staves. Between each nut and stave is placed a washer three inches in diameter. There are two slots in each end of each stave, and each stave is fastened to the rattler head by means of two bolts at each end. Two of these staves are called "covers," because they are arranged so that they can be readily removed from the rattle box. The bolts used in fastening these two covers work on a swivel, so that upon loosening the nuts the bolts will drop back out of the end slots, thus allowing the covers to be removed. The rattle box proper is six feet long and thirty-seven inches in diameter and is cylindriform. It is turned at the rate of twenty-three revolutions a minute by a shaft, connected with gear-wheels which are in turn connected with the main or power shaft by belt and pulleys, one of the pulleys being a "tight pulley" and the other a "loose pulley" turning upon the shaft without turning the shaft. The belt is switched from one pulley to the other by means of pushing a rod.

In the operation of the machine the covers are removed and castings are placed in the rattle box through the openings made by the removal of the covers. The covers are then replaced and the rattle box made to turn by shifting the belt to the "tight pulley," and thereby the castings in the rattler are thrown against each other and the sides of the rattler and thus cleaned.

Plaintiff's declaration consists of three counts. The first count avers in substance that the defendant (appellant) failed and neglected to furnish one of the covers of the rattler with good, safe and secure fastenings, and that by reason thereof said cover was by the force of its rapid revolutions thrown with great violence against the plaintiff, and he was thereby knocked against and into other moving machinery

and injured, and that plaintiff did not know that said fastenings were defective, insecure and insufficient to hold the covering on said box while in motion.

The second count, in addition to the averments of the first count, alleges that the plaintiff was subject to the instructions and orders of a boss or superintendent with authority to employ and discharge men, and that the plaintiff was not skilled in the construction and operation of machinery and had no knowledge as to the required strength of any piece of machinery to perform its work, and did not know whether or not the said fastenings were safe and sufficient to bind and hold said cover to said box while in motion, and that upon making inquiry of his boss in regard thereto was informed by him that said fastenings were good, safe and sufficient and that there was no danger in working near said box while in motion and that his said boss ordered him to work near and about said box while the same was running at a high rate of speed.

The third count avers that the defendant furnished an unsafe, insecure and defective cover for the opening into said box, to wit, a cover with one of the corners broken off so that it could not be fastened and held safely and securely on the box while it was in motion, and in consequence thereof the covering of the box became loose and detached, so that the castings which were inside of the box came out through the opening and struck plaintiff and he was knocked against and into other moving machinery and injured, and repeats the averments of the second count as to the plaintiff's want of skill and knowledge regarding machinery. It also avers that while the plaintiff knew that one corner of the cover was broken off, and complained about the same, he did not know what effect such defect would have upon its safety and sufficiency, and that upon making inquiry of his boss in regard thereto he was informed that said covering was good, safe and sufficient, and that there was no danger in working near the box while in motion.

The evidence on the part of the plaintiff tended to show that on the morning of April 17, 1903, when plaintiff com-

menced operating the rattler, he discovered that one corner was broken off the cover to the rattler and thereupon he called the attention of the foreman to the condition of the cover and the bolt and told him that the screw or thread in the bolt was not good, was broken, and one corner was broken off the cover; that the foreman or boss said to him: "It is all right, go ahead." The plaintiff thereupon shoved the belt over and started the rattler, and proceeded with his work of oiling other machines. The plaintiff then observed that a brake shoe was sticking out from the rattler in question between the cover and the box, and sprang to shut off the power and stop the rattler. As he was doing this he was hit in the back by a casting from the rattler and fell against other moving machinery, receiving the injuries complained of.

On the trial in the court below the jury returned a verdict finding the defendant guilty and assessing the plaintiff's damages at $775. Judgment was entered on this verdict and defendant prosecutes this appeal.

HORTON & BROWN, for appellant.

GEORGE A. BRINKMAN and PAUL P. HARRIS, for appellee.

MR. JUSTICE SMITH delivered the opinion of the court.

It is urged by appellant as a ground of reversal that the trial court erred in permitting Leon Waikewicz to act as an interpreter in the trial of the case.

It appeared from the testimony of Waikewicz touching his competency to act as an interpreter that the plaintiff was living in Waikewicz' house; that he had talked with the plaintiff about this law suit and that he had loaned plaintiff $11, which was unpaid, and that he had acted as interpreter between the plaintiff and his attorney all through the preparation of the case for trial. It further appears from the record that Waikewicz was a poor interpreter, having very little knowledge of the English language. It does not appear, however, that he acted unfairly in any particular or that appellant suffered in any way from any bias in favor

American Brake Shoe & F. Co. v. Jankus.

of appellee in his interpretation of the testimony of the wit-
nesses.   Attorneys for appellant do not point out to the court
any instance of unfair conduct on his part during the trial,
and we must conclude that appellant suffered no particular
injury from erroneous or inaccurate interpretations of the
testimony.   We think it must be shown that some injustice
has been done by the selection of an interpreter before we
would be justified in interfering with the discretion of the
trial judge in the selection of an interpreter.   We find in
this record no abuse of discretion in the selection made.

On the trial the plaintiff was allowed to exhibit his inju-
ries to the jury.   Having removed for that purpose his coat,
vest and shirt and a part of his undershirt, the plaintiff left
the witness stand and while he was standing before the jury
he was asked by his attorney to lift up his arm and show it.
The plaintiff replied: "I cannot lift it up any more; the
arm is sore."   Thereupon one of the jurors arose from his
seat and stepping forward took hold of plaintiff's arm and
moved it slowly up and down, and bent it at the elbow, and
felt of it between the elbow and shoulder.   To all of this the
defendant objected and excepted and now assigns it for error.
The point is made that to permit one of the jurors to take
hold of, move, and bend the arm of the plaintiff in order
to ascertain for himself whether or not the arm was stiff or
otherwise permanently injured is quite a different matter
from permitting all of the jurors to view the injuries to-
gether.   Counsel for appellant cite in support of their con-
tention Stampofski v. Steffens, 79 Ill., 303; Doud v. Guthrie,
13 Ill. App., 653, and Consolidated Ice M. Co. v. Trenton
Hygeian Ice Co., 57 Fed. Rep., 898.   All these cases, how-
ever, pass upon personal examinations or inspections made
by jurors out of court during recesses of the court, and not
in the presence of the court, or an officer of the court.   There
are many obvious reasons for not allowing jurors to supple-
ment the knowledge of the subject-matter of investigation ob-
tained in court from the evidence produced, by pursuing per-
sonal and private investigation out of the presence of the
court, during the trial.   It is impossible for the court or coun-

sel to know just how far the juror has gone with his inquiry,
or by what means he has pursued it, or to make a record of
it, without turning aside from the regular trial of the cause
and investigating the acts of the juror and the results there-
of.   This would not only be irregular, but it would neces-
sarily result in permitting the inquiry by jurors to go be-
yond the control of the court and beyond the established rules
of evidence, and into irrelevant and immaterial matters.
As said in Clark v. Brooklyn Heights R. R. Co., 177 N. Y.
Appeals, 359: "The object of all evidence is to inform the
trial tribunal of the material facts which are relevant as
bearing upon the issue, in order that the truth may be elicited
and that a just determination of the controversy may be
reached.   It is not objectionable, in these cases, that the evi-
dence may go beyond the oral narrative and may be addressed
to the senses; provided that it be kept within reasonable lim-
its by the exercise of a fair judicial discretion.   It should be
only of a nature to assist the jurors to an understanding of
a situation, or of an act, or to comprehend objective symp-
toms resulting from an injury.   Examples of this class of evi-
dence are frequent; in the viewing of the place of an occur-
rence, in the production of some article relevant to the issue,
or in the exhibition of the person and of the marks, or ob-
vious evidences of injuries sustained.   Personal injuries may
be simulated and deception may be practiced in such exhi-
bitions, but that can no more be prevented than can perjury
in testimony."   In the above case the plaintiff was seeking
to recover damages for personal injuries sustained in a col-
lision, and the court permitted him to leave the witness stand,
at the request of his counsel, to exhibit himself to the jury
in the act of writing his name, and of taking a drink of water.
The record represents him as taking a glass of water with
both hands and as spilling the water, through the trembling
of his hands, and as using his handkerchief in the same man-
ner.   This exhibition was to illustrate or to emphasize his
testimony that he could use his hands with difficulty.   The
court thought that this spectacular illustration of his symp-
toms was calculated to prejudice the minds of the jurors.

The proceedings in that case, however, were very different from the matters here complained of. We do not think it was reversible error to allow the juror to take hold of the plaintiff's arm and move it as indicated.

We think the evidence tends to show that the injury to the plaintiff complained of was caused by the defects described in the declaration. The fact that the corner was broken off some months prior to the accident and that the rattler had been used during that time without accident, does not necessarily disprove the theory of the plaintiff's case. There is ample evidence in the record to support the verdict of the jury.

Appellant contends that the court erred in giving the fifth instruction asked by the plaintiff. That instruction is as follows:

"The court instructs the jury that if the evidence shows, and you believe from the evidence, that the plaintiff, while in the discharge of his duty, was confronted with sudden danger, the obligation resting upon him to exercise due care for his own safety, does not require him to act with the same deliberation and foresight which might be required of him under ordinary circumstances."

It is urged that there was no evidence upon which the instruction can be based.

It appears in the evidence that one corner of the cover was broken and that a bolt used to fasten on the cover was so worn or defective as to cause the plaintiff and his fellow-servants to be apprehensive as to the safety of the rattler. Plaintiff after calling the attention of his foreman to the condition of these parts was directed to start up the machine. When he saw the dust and castings escaping from the rattler he was confronted suddenly with danger. Under such circumstances to have run away would have been a wiser course for him to take, and yet to an ordinarily loyal employe the proper and natural act would seem to be to stop the rattler and thereby save the property of his employer and pro-

18

mote the safety of his fellow-servants. Indeed it was the duty of appellee to try to save the property and to seek to prevent the injury that might result if the rattler was allowed to run in its then condition. Pullman Palace Car Co. v. Laack, 41 Ill. App., 37. He was confronted suddenly with danger and a duty arose in view of that danger. The law under such circumstances does not require the servant to act with the same deliberation and foresight which might be required of him under ordinary circumstances, where he would have time for deliberation. We think the instruction was proper under the evidence.

The eighth instruction asked by plaintiff and given by the court is as follows:

"No. 8. The court instructs you on the law in this case, that where an act is performed by a servant, in obedience to a command from one having authority to give it, and the performance of the act is attended with a degree of danger, yet, in such case it is not requisite that such servant shall balance the degree of danger, if any, and decide with absolute certainty whether he must do the act or refrain from doing it; and his knowledge of attendant danger will not defeat his right of recovery if in obeying the command he acted with the degree of prudence that an ordinarily prudent man would have done under the circumstances, provided these facts are warranted by the evidence."

It is urged that the plaintiff was instructed to start the machine in motion, not to stop it, and that the instruction had no basis in the evidence. The evidence, however, shows that it was a part of plaintiff's duty to stop the rattler whenever proper or necessary. We do not perceive that the giving of this instruction prejudiced appellant in any way.

Appellant contends as a ground of reversal that appellee assumed the risks, if there were any, arising from the defects in the machine alleged in the declaration. The rule that when a servant seeks to recover from his master for an injury received from defective appliance, he must show not only that the appliance was defective and that the master

had knowledge thereof, or ought to have had, but that he, the servant, did not know of the defect, and had not equal means of knowing with the master, is appealed to in support of this contention. But "it is well settled that even though the plaintiff knew of the defect, if the master ordered him to proceed with the dangerous work he did not assume the risk of so doing, unless the danger was so manifest that a person of ordinary prudence and caution would not have incurred it. Even if the servant has some knowledge of attendant danger his right of recovery will not be defeated if, in obeying the order, he acts with the degree of prudence which an ordinarily prudent man would exercise under the circumstances." Gundlach v. Schott, 192 Ill., 512; Wells v. Bourdages, 193 Ill., 328. The evidence shows that appellee went for and brought the foreman from another part of appellant's factory to the rattle box, and pointed out to the foreman the condition of the cover and the bolt for holding it in place, and after inspecting it the foreman ordered him to go ahead and perform his work. Under such circumstances the plaintiff had a right to assume that the foreman with his superior knowledge of the facts would not expose him to unnecessary perils. Such an order gave the plaintiff the right to rest upon the assurance that there was no danger, for that was implied by the order.

We find no reversible error in the record. The judgment of the court below is affirmed.

*Affirmed.*