JOHN H. HAYES v. C. A. HOUKE *et al.*

CEMETERY — *Evidence Supports Finding of Dedication.* The evidence in this case reviewed, and *held* sufficient to support a finding that the land in question had been dedicated to the public, for use as a cemetery, by grantors of the plaintiff in error, and accepted for such use; and also, *held*, that such dedication by the grantors of the plaintiff in error is binding upon him, especially as he purchased with knowledge of the occupancy of such ground by the public, though there was no reservation of such ground in his deed, nor in the deeds of any of his grantors.

*Error from Neosho District Court.*

THE opinion states the case.

*J. L. Denison,* for plaintiff in error.

*Cox & Stratton,* for defendants in error.

Opinion by STRANG, C.: This action was instituted February 15th, 1887, by the above-named defendants, to restrain the plaintiff from interfering with a certain graveyard in Neosho county, known as "Valley Cemetery." A temporary injunction was allowed, and upon the trial of the case, August 1, 1887, the court found for the plaintiffs below, making the injunction perpetual. Motion for a new trial was overruled.

There are two questions raised in the record, one arising upon a demurrer to the petition which was overruled, in which it was claimed there was a misjoinder and non-joinder of parties; and also a misjoinder of causes of action. The questions growing out of the action of the court in overruling the demurrer were abandoned by the plaintiff in error before filing his brief, as he says therein in his statement of the case: "The only question then to be determined by the court was as to the claim of dedication — was there a dedication on the part of the owner of the fee, and was such dedication accepted by the public?" The question thus raised, the court below answered in the affirmative.

We do not see how we can reverse the action of the court in

this respect.   There is evidence in the case proving, or tending to prove, both a dedication and acceptance thereof for the purpose of a public cemetery.   It is conceded that Jarritt, who first settled upon the quarter of land, to which the land taken for a cemetery originally belonged, dedicated at least a portion of the land now occupied as a cemetery to the public for that purpose, so far as he could do so.   He did not own the land in fee, however; he was simply a settler upon the land, which was school land, and the title was in the state of Kansas. Jarritt sold his settler's right to the land to one J. A. Auton, who purchased the land of the state, and obtained a patent therefor in 1873.   Jarritt settled upon the land in 1867. Auton, having obtained a patent to the land, owned it in fee, and had the power to dedicate the land for a cemetery, or for any other purpose.   The public was already using said land for a cemetery when Auton purchased Jarritt's right to the land, and after he became the owner in fee, he recognized and ratified the dedication of the original acre for cemetery purposes.   J. A. Huston, in his testimony, says: "I said to Auton that the plat was not large enough; that it was a matter the whole neighborhood was interested in, and he said Jarritt reserved it and dedicated it as a burying-ground."

V. Reddick, a witness, testified that he worked for Auton; that Auton instructed him, in setting out the hedge for a fence, to stop when he got to the graveyard; that he was not to set any further than the graveyard.   There could hardly be any question after that but that there was a sufficient dedication of the first acre of land then used by the public for a cemetery; and no question as to its acceptance by the public for that purpose.   Using the ground for the purpose of burying the dead, by the public, constituted an acceptance.

As to the additional acre, the evidence shows that the public were encroaching upon it by burying the dead, beyond the limits of the original acre, before Auton left the premises. He talked with the people of the neighborhood about it, and said he would sell the land to them.   He never objected to the use of the ground as a place of burial for the dead.   Auton

sold to Clark and Ketchum. He told them there was a bury-
ing-ground there, but that the land had not been paid for.
The public continued to bury the dead of the neighborhood in
this cemetery after Clark and Ketchum took possession of the
farm. They never objected to the use of the ground for that
purpose. While they were in possession, there was talk of
the people buying both acres of the ground occupied by the
cemetery of them. At that time the land was surveyed, staked
off and platted, but the plat was never recorded, and the land
was never paid for, nor did they object to its continual use as
a cemetery. They sold the farm to Morris and Morris, who
occupied it awhile. During their occupancy, the public used
the grounds as before, without objection by them. They sold
to one Guss, who held the land but a short time, and conveyed
to plaintiff in error in 1886. Guss, through whom the title
passed to the plaintiff in error, was the surveyor who made
the survey of the cemetery land when Clark and Ketchum
owned the farm. We think Clark and Ketchum dedicated
the second acre to the public as a part of the graveyard when
it was surveyed and staked out, and they permitted the public
to use it for burial purposes. It is true they were never paid
for the land. But after they had joined in a survey of the
land, and it had been staked out, and thus, by them, turned
over for cemetery purposes, and they sat by and saw the public
using it for burial purposes without objection, the fact that
they were not paid therefor would not interfere with the dedi-
cation of the ground to the public; and as the public accepted
it, and used it with their knowledge, and without any objec-
tion on their part, they would have been estopped from saying
the ground was not dedicated to the public. But they never
raised the question, nor did their grantees; nor the successor
of their grantees; nor did anyone question the right of the
public to use and occupy the ground as a cemetery until the
plaintiff in error purchased the land, in 1886, about twenty
years after the cemetery was started.

We think that, whether the land was ever paid for or not,
the fact that it was used, a part of it for twenty years, and all

of it for many years, as a resting place for the dead, without objection by any one of the numerous owners of the tract from which it was taken, is sufficient to vest in the public a right superior to any that the plaintiff herein could get by purchase of said original tract with full knowledge of the existence of the cemetery when he purchased. Permission by his grantors to use and occupy the ground as a cemetery was a waiver or abandonment of their rights, which subordinated them to its use by the public, and the plaintiff, having purchased with knowledge of the occupancy of the public, is bound by it. ( *Boyce v. Kalbaugh,* 28 Am. Rep. 464; *Hagaman v. Dittmar,* 24 Kas. 42; *Giles v. Ortman,* 11 id. 59; *Brooks v. City of Topeka,* 34 id. 277; *Beatty v. Kurtz,* 2 Pet. [U.S.] 566; *Davidson v. Reed,* 53 Am. Rep. 613.)

We advise that the judgment of the district court be affirmed.

By the Court: It is so ordered.

All the Justices concurring.