## FIRST NAT. BANK OF McLOUD v. CITY NAT. BANK OF WELLINGTON, TEX., et al.

## CITY NAT. BANK OF WELLINGTON, TEX., v. STRIBBLING et al.

Nos. 8184. 8225—Opinion Filed Sept. 10, 1918.

(175 Pac. 253.)

(Syllabus.)

### 1. Conversion—What Constitutes.

"Conversion" is any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein.

### 2. Chattel Mortgages — Conversion — Variance—Demurrer.

In an action brought by a chattel mortgagee charging several defendants with having conspired to cheat and defraud the plaintiff by causing the mortgaged property, at the time in the mortgagor's possession, to be shipped and transported to market and there sold and delivered, without its consent and to its great detriment and damage, with knowledge of plaintiff's rights in the premises, and by reason whereof plaintiff was prevented from taking possession of and exercising lawful dominion over it, whereby plaintiff was damaged in a sum equal to the value of the cattle, and an additional sum for expenses laid out and expended in searching for and attempting to recover the cattle alleged to have been wrongfully converted, and where the evidence wholly failed to prove the conspiracy charged, and the only evidence in support of the verdict against the defendant bank (the verdict being in favor of the other defendants) was that such defendant had received on deposit from the mortgagor the proceeds of the sale, which had subsequently been checked out by the depositor, and a portion thereof subsequently paid the bank in settlement of the depositor's indebtedness to it, being an action for the conversion of the cattle arising out of the conspiracy charged, and not a suit against the bank to impress a trust on the proceeds of the sale, was not supported by the evidence, and it was error for the trial court to overrule a demurrer thereto.

### 3. Action — Joinder of Causes of Action — Common Liability.

In an action against several defendants charging a conspiracy to cheat and defraud the plaintiff whereby certain cattle upon which plaintiff held a mortgage were con-

verted to the use of the alleged conspirators and on account of which it sought to recover a joint judgment against such defendants, during the trial and at the close of the plaintiff's evidence, the plaintiff asked permission to amend its petition by adding thereto a paragraph charging one of the defendants with having obtained possession of the proceeds of the sale of the mortgaged property in such way as to constitute such proceeds a trust fund for which plaintiff asked judgment against said defendant alone, at the same time insisting upon its original claim to judgment against all the defendants remaining in the case. Held, that as the proposed amendment did not affect all the parties to the action as required in section 4738, Rev. Laws, and as the two causes of action could not have been united in action, the court did not err in refusing leave to file the amendment.

**4. Appeal and Error—Judgment—Reversal —Refusal of Trial Amendment.**

In a proceeding in error in the Supreme Court, the judgment of the trial court will not be reversed on account of the court's action in refusing a trial amendment to the petition, where the only defendant affected by such tendered amendment is not made a party to the proceedings to review.

Error from District Court, Oklahoma County: John W. Hayson, Judge.

Actions by the City National Bank of Wellington, Texas, against J. B. Stribbling. J. B. Stribbling Commission Company, A. A. Woodrow, First National Bank of McLoud, and others, dismissed as to other than the named defendants. Plaintiff's amendments refused on objection by First National Bank of McLoud, and plaintiff brings error, and judgment for plaintiff against the First National Bank of McLoud and in favor of the other defendants, and the First National Bank of McLoud brings error, which proceedings in error were consolidated. Judgment refusing the amendment affirmed, and judgment against the First National Bank of McLoud reversed and remanded.

Abernathy & Howell and Ames, Chambers, Lowe & Richardson, for plaintiff in error First Nat. Bank of McLoud.

R. H. Templeton and Burford, Robertson & Hoffman, for defendants in error City Nat. Bank of Wellington, Tex.

SHARP, C. J. On the 12th day of October, 1914, J. F. Ward, a resident of Lincoln county, Okla., purchased of James F. Muse, a resident of Collingsworth county, Tex., 100 head of three and four year old steers, the purchase price being $5,200, $500 in cash and a note for $4,700 payable February 1, 1915.

At the time of the sale the cattle were located in Texas, but were afterwards by agreement of the parties moved to Lincoln county, Okla., by Ward, where they were kept and fattened. Muse afterwards sold and transferred the Ward note to the City National Bank of Wellington, together with the chattel mortgage on the cattle given by Ward to secure the payment of the note. The cattle having been prepared for the market, Ward, on January 10, 1915, shipped them to the Stribbling Commission Company, a live stock commission company at Oklahoma City, who afterwards sold them to A. A. Woodrow. Ward's shipment included a carload of hogs. After deducting commissions, feed bill, and yardage, the Stribbling Commission Company paid for the cattle by checks payable to the order of Ward, one in the sum of $20, the second for $7,053.32; the latter check was received by the McLoud National Bank, and the sum evidenced thereby placed to his credit. On January 14th, Ward sent to the Wellington bank his check on the McLoud bank for $4,-500 payable to the order of Muse, which check, on the 18th day of January following, was returned to Ward by the Wellington bank accompanied by a letter stating that the bank did not accept personal checks in payment of notes, and requested Ward to send exchange payable to the bank's order for the full amount of the note with accrued interest. This Ward failed to do, and after some futile correspondence on the part of the Wellington bank, on or about the 1st of February following, the bank sent its attorney to McLoud for the purpose of collecting the note. The attorney's efforts in this respect proved unavailing, and on the 10th day of March the bank instituted an action to recover its indebtedness, naming as defendants J. B. Stribbling. J. B. Stribbling Commission Company, A. A. Woodrow, Sulzberger & Sons, C. M. Keys Commission Company, and the first National Bank of McLoud.

The petition filed charged the several defendants therein with having conspired with Ward to cheat and defraud plaintiff bank by causing the mortgaged cattle to be transferred to Oklahoma City and there sold and delivered without plaintiff's consent and to its great detriment and damage; that the defendants each and all knew that the cattle in question were mortgaged and that plaintiff was the owner and holder of the note and mortgage; that, in disregard of plaintiff's rights, by their wrongful and unlawful action and the conspiracy charged de

fendants had prevented and precluded plaintiff from taking possession of and exercising its lawful dominion over the cattle. Issues being joined, the case went to trial, and at the conclusion of the plaintiff's evidence plaintiff dismissed its action without prejudice as to the defendants Sulzberger & Sons and C. M. Keys Commission Company, and at the same time asked permission to file an amendment to the petition for the purpose, as stated by counsel, of "making the allegations conform to the proof." The amendment charged that it was offered "in addition to the allegations and averments contained the original petition and the first amendment thereto." The first amendment referred to in no wise changed plaintiff's original cause of action, except to increase the amount of recovery sought by reason of additional costs and expenses incurred in an effort to enforce the collection of the note. On objection of counsel for the McLoud bank, the court refused to permit the amendement to be made, to which the plaintiff excepted. This action of the court is under review in the proceedings in error in No. 8184. At the conclusion of all of the evidence. the jury returned a verdict in favor of the Wellington bank and against the McLoud bank for $6,444.50, and found in favor of the other defendants.

The principal error relied upon by the McLoud bank is in overruling its demurrer to the plaintiff's evidence. The theory upon which plaintiff sought a recovery in the lower court, and which it urges in this court, is that there was abundant evidence to sustain its charge of a conspiracy, especially its charge of a conspiracy between the McLoud bank and Ward. As circumstances tending to establish a conspiracy. it is pointed out that, prior to Ward's purchase of the cattle from Muse, the McLoud bank had in answer to a confidential inquiry from the Wellington bank, under date of October 13, 1914, written the Wellington bank a letter recommending Ward as a man enjoying a good reputation, worthy of confidence. and an experienced cattleman, while in fact Ward was at the time indebted to the bank for borrowed money; and the further fact that on February 8, 1915, Ward absconded.

Under the common-law writ of conspiracy, which was applicable only to a conspiracy to have a person indicted for treason or a capital felony, a judgment could not be entered against one or two defendants if a verdict was found in favor of the other. Saville v. Roberts, 1 Ld. Raym. 379. That writ, which is now obsolete, has been superseded by an action on the case in the nature of a conspiracy. As the gist of the modern action is the damage done to the plaintiff, the authorities sustain the proposition that, where damages is shown for which one of the defendants may be liable, a verdict may be rendered against him even though no conspiracy is proved. In other words, it is not simply for conspiring to do the unlawful act that the action lies, but for doing the act and that affords the ground of the action. "A simple conspiracy," says Nelson, Chief Justice, in Hutchins v. Hutchins, 7 Hill (N. Y.) 107, "however atrocious, unless it resulted in actual damage to the party, never was the subject of a civil action; not even when the old form of a writ of conspiracy, in its limited and most technical character, was in use." The authorities generally support the view that it is the damage sustained, and not the conspiracy, that forms the gist of the action. 5 R. C. L. 1091; Kimball v. Harman et al., 34 Md. 407, 6 Am. Rep. 340; Jones v. Monson, 137 Wis. 478, 119 N. W. 179, 129 Am. St. Rep. 1082; note 19 Ann. Cas. 1250-1254. The action is not therefor to recover on account of a conspiracy, but for damages sustained thereby, the proximate result of the wrongful act. Appreciating the necessity of the situation, plaintiff charged in effect a conversion of the cattle as the product of the conspiracy; that is to say, that the defendants conspired with Ward to deprive plaintiff of the beneficial ownership and possession of the cattle. The record is silent as to whether the McLoud bank in any wise or at any time exercised any act of dominion or control over the cattle. much less that it had possession of them. Indeed, none of the elements of a conversion are present. True it is that the proceeds of the cattle save the check for $20 was deposited in the McLoud bank to Ward's credit. When this was done, however, the cashier of the bank himself wrote out a check for $4,500 made payable to Muse, the original payee, which check was signed by Ward and forwarded to the bank at Wellington. It does not appear that the McLoud bank advised or in any way aided Ward in the sale of the cattle, but that on the other hand it assisted him in making out the check against his deposit in the bank, in an offer of substantial payment of his debt. The fact that in the month of October the McLoud bank, in answer to the inquiry from the Wellington bank, wrote a commendatory letter respecting Ward, unsupported by any evidence tending to establish a conspiracy. is not worthy of serious consideration. That Ward in fact bore a good reputation prior to the time he ab-

sconded is uncontroverted. The action of the bank in honoring Ward's checks drawn against his deposit did not tend to establish a previous conspiracy to deprive plaintiff of its security; neither did the fact that Ward, four weeks after the sale. fled from the state.

A "conversion" is defined in Aylesbury Merc. Co. v. Fitch, 22 Okla. 475, 99 Pac. 1089, 23 L. R. A. (N. S.) 573, as "any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." While in Continental Gin Co. v. De Bord, 34 Okla. 66, 123 Pac. 159, it is said that it is generally true that one in order to be guilty of a conversion of personal property must be in possession of it; yet, if he exercises acts of dominion over the property and participates in the wrongful act of him who is in actual possession by aiding and abetting in the wrongful disposition and shares in the proceeds thereof, he would then be guilty of a conversion. But it does not follow as a consequence of the rule announced that the local bank, innocent of any wrongful intent, would be guilty of a conversion merely because the proceeds of the sale were deposited with it. or that such deposit was subsequently checked out by the depositor. In such case, there is no participation or sharing in the proceeds such as the law contemplates in order to constitute a conversion, though the bank, under the circumstances disclosed in the record, knew the source of the deposit. If thereby a liability attached on the part of the bank. it was not in an action at law for conversion of the cattle. Dodd-Lear Hardwood Lumber Co. v. Gyr, 44 Okla. 630, 146 Pac. 16; Bank of Commerce v. Gaskill, 44 Okla. 728, 145 Pac. 1131; Sivils v. Aldridge, 62 Okla. 89, 162 Pac. 198. The bank was promptly informed that Ward had sold the cattle. No secret was made of the sale, or that the funds were on deposit to Ward's credit in the McCloud bank. Besides Ward as a witness for plaintiff on cross-examination testified that he had authority to sell the cattle. The origin of the trouble appears to have arisen over a controversy in regard to the payment of a commission on the original sale, and the loss of a steer, and the further claim on the part of Ward that the Wellington bank's attorney insisted on the payment of a 10 per cent. attorney's fee on the occasion of his visit to McCloud to see Ward in respect to the payment of the note. Be this as it may, considered in connection with the fact that a check for $4,500 was sent to the Wellington Bank, though payable to Muse instead of proving, tends to refute, the charge of a previous conversion, at least so far as the McLoud bank is concerned. If, because of its payment of Ward's checks either to third parties, or in settlement of Ward's indebtedness to the bank, the latter committed a wrongful act, it would not be liable in conversion unless on account of some prior agreement or understanding, keeping out of sight the question of its liability for trust funds in its possession. It must be remembered that it was upon the theory of a wrongful conversion of the cattle that the plaintiff sought a recovery in the lower court and upon which it seeks to affirm that judgment in this court. Such being the case, and there being no evidence tending to sustain the action for conversion. the trial court erred in overruling the demurrer, for which the judgment against the McLoud bank must be reversed and the cause remanded.

In the separate appeal prosecuted by the City National Bank of Wellington against the J. B. Stribbling Commission Company, J. B. Stribbling, and A. A. Woodrow, though numerous errors are assigned in the petition in error, the only point urged is that the trial court erred in not permitting the amendment to be made. Plaintiff states that its proposed amendment was offered "out of an abundance of caution," and not because. the original petition was defective, or that there was a variance between the allegation of the original petition and the proof, "but because of plaintiff's statutory, right to embody in its pleadings any cause of action it might have against the defendants which arose out of the same transaction." The amendment we have seen was offered, not in lieu of the original petition, but in addition thereto and in connection therewith. It charged the giving of the original letter of recommendation by the McLoud bank, the sale of the cattle by Muse to Ward. the due recordation of the mortgage in Lincoln county knowledge of the transaction between Muse and Ward by the McLoud bank and alleged that because of the relationship of the parties it became the duty of the bank to safely keep the fund for the use and benefit of plaintiff in error; that having permitted the money to be checked out of the bank by Ward, and having failed to discharge its duty in the premises, it became and was liable to plaintiff for the money received by it, the proceeds of the sale.

The matter of permitting amendments during the course of a trial rests largely

in the discretion of the trial court. Section 4738, Rev. Laws 1910, authorizes a plaintiff to unite several causes of action in the same petition, whether they be such as have heretofore been denominated legal or equitable, or both, where they all arise out of any one of the following classes: (1) The same transaction, or transactions, connected with the same subject of action. (2) Contracts, express or implied. (3) Injuries, with or without force, to person and property, or either. (4) Injuries to character. (5) Claims to recover the possession of personal property with or without damages for the withholding thereof. (6) Claims to recover real property, with or without damages for the withholding thereof, and the rents and profits of the same. (7) Claims against a trustee by virtue of a contract, or by operation of law. The statute further provides that the causes of action so united must all belong to one of the classes named, and must affect all the parties to the action, except in actions to enforce mortgages or other liens. The amendment states no cause of action or invokes no relief against the defendants other than the McLoud bank. It is not necessary to determine whether the causes of action as set up in the original petition and contained in the trial amendment belonged to the same class, as it is clear they do not affect all the parties to the action. This requirment was observed by the court in Aylesbury Merc. Co. v. Fitch, 22 Okla. 475, 99 Pac. 1089, 23 L. R. A. (N. S.) 573 and Bryan v. Sullivan, 55 Okla. 109, 154 Pac. 1167. The statute permitting the plaintiff to unite several causes of action in the same petition, providing the cause of action affected all of the parties to the action, has received much consideration by the Supreme Court of Kansas from which state our statute on joinder of causes of action was adopted. Among the reported cases involving a consideration and application of the statute are the following: Hoye v. Raymond, 25 Kan. 465; Hentig v. S. W. Mut. Ben. Ass'n, 45 Kan. 466, 25 Pac. 878; Rizer v. Board of Com'rs, 48 Kan. 389, 29 Pac. 595; Haskell County Bank v. Bank of Santa Fe, 51 Kan. 39, 32 Pac. 624; Atchison, T. & S. F. Ry. Co. v. Co. Com'rs, 51 Kan. 613, 33 Pac. 312; Harrod v. Farrar, 68 Kan. 153, 74 Pac. 624; Holderman v. Hood. 70 Kan. 267, 78 Pac. 838; Fenson v. Battey et al., 70 Kan. 288, 78 Pac. 844, 3 Ann. Cas. 282.

The original petition charged and the theory upon which the case was tried was, that as a result of a conspiracy entered into between the several defendants the cattle on which the Wellington bank had a mortgage were sold by defendants in disregard of the legal rights of the owner of the mortgage. and that the wrongful acts complained of constituted a conversion of the property mortgaged. A joint judgment was asked against all the defendants, not only for the value of the cattle, but for the additional sum of $1,255, costs and expenses incurred. This charge of a joint wrong by the several defendants the amendment laid out of the case. It sought to bring into the action the issue that the proceeds of the sale of the mortgaged cattle constituted a trust fund in the bank's possession for which it was chargeable in equity. In this the defendants Stribbling, the Stribbling Commission Company, and Woodrow were in no wise interested. There was no common or joint liability such as would authorize the joinder of the different causes of action, because, as we have seen, the amendment proposed affected only the liability of the defendant bank. The case of Benson v. Battey, supra, is particularly in point. There it was observed that one of the causes of action attempted to be united was in equity for an accounting, and the other an action at law for damages. In one, two defendants were treated as trustees. and, in the other, the third defendant was treated as a tort-feasor. In one the recovery sought was that each defendant account for so much of the trust as he obtained and held in violation of the trust, while the other was for the full amount of the damages inflicted by the wrongdoing of a defendant, without regard to whether he received or held any of the trust fund. It was said that, in the equitable accounting, the determination would be by the court without a jury; and, in the action for damages, the third defendant would be entitled to a jury trial as a matter of right. That even though the causes of action united in the petition were not in their nature incongruous, the fact that each did not affect all of the defendants would render the petition demurrable for misjoinder of causes of action.

If the causes of action could not originally have been united in the same petition, because of the provision requiring that all the parties be affected, it cannot be said that the trial court erred in refusing to permit plaintiff, at the conclusion of its testimony, to amend its petition, and thus during the trial do what it could not originally have done. Had the plaintiff at the time of offering its amendment dismissed its action as to the other defendants, a different situation

would probably be presented; but this was not done, and it is here insisted that the judgment against the McLoud bank should be sustained upon the proofs offered in support of its original petition. True, the plaintiff also asks that the amendment be treated as allowed as made over defendant's objection, stating that no possible harm can result therefrom. Having confessedly tried the case upon the conversion theory, counsel's request must be denied. To allow it would be to deprive the McLoud bank of meeting an issue not before the trial court and which could not properly have been put in issue so long as the original petition charging a joint liability was relied upon as a basis of recovery by the plaintiff bank. By the bringing in of the amendment during the trial plaintiff could not have an action against one of the defendants to impress a trust on funds coming into its possession, and at the same time prosecute its action against such defendant and others on the ground of an original conversion of the mortgaged cattle. The claim that the court should consider the amendment as having been made cannot be considered for another and controlling reason: The McLoud bank is not a party to the appeal prosecuted by the Wellington bank.

In the motion for a new trial filed by the Wellington bank, it was only asked that the judgment be vacated and set aside as to the verdict in favor of the defendants J. B. Stribbling and A. A. Woodrow. In the petition in error filed in this court, it is only sought to reverse the judgment of the lower court in favor of the defendants J. B. Stribbling, J. B. Stribbling Commission Company, and A. A. Woodrow; the McLoud bank being neither named nor made a party. The appeal prosecuted by the Wellington bank is not on cross-petition in error, but by independent proceedings to review, separately docketed and numbered. The appeal prosecuted by the McLoud bank from the judgment rendered against it is wholly disconnected with the appeal of the Wellington bank. The respective motions for new trial were overruled on November 13, 1915, and the order consolidating the two cases was made in this court on August 6, 1916. No appearance has at any time been entered in this court in No. 8184 on the part of the McLoud bank. In such circumstances, the action of the trial court in refusing to permit the trial amendment to be made will not, for fundamental reasons be reversed. From what has been said we conclude that the lower court did not err in refusing the trial

amendment, and that there is no such error presented to this court as requires a reversal of the judgment against the Wellington bank.

All the Justices concur, except MILEY, J., absent and not participating.