## BELCHER v. SPOHN.

No. 23031.   Dec. 18, 1934.

Chapman & Chapman, for plaintiff in error.

Goode, Dierker & Goode, for defendant in error.

PER CURIAM. This action was brought

by the defendant in error, as plaintiff below, against the plaintiff in error, as defendant below, for conversion of 9½ acres of cotton. Parties hereinafter will be referred to as plaintiff and defendant as they appeared in the trial court.

The petition filed by the plaintiff alleges that plaintiff, John W. Spohn, moved onto the land under an oral agreement with the defendant, R. W. Belcher, the owner of the land, whereby the defendant agreed to furnish plaintiff with teams, tools, and seed necessary to make the crop; that about September 12, 1929, the 9½ acres of cotton were about ready to pick, and the defendant, R. W. Belcher, maliciously, wantonly, oppressively, and with desire to drive the plaintiff from the premises, fenced the said cotton crop and turned 12 or 14 mules and other stock upon such crop, and totally destroyed the crop, and converted the same to his own use and benefit, and that such crop was of the value of $400; and that the action of the defendant was malicious, wanton, and oppressive, and that plaintiff should recover punitive damages in addition to actual damages. The petition prays judgment against the defendant for $400 actual damages, and $2,000 punitive damages.

The defendant, R. W. Belcher, by answer, denied generally the allegations of plaintiff's petition; denied any oral contract with the plaintiff; alleges that if plaintiff worked the land he did so through other parties, and not under agreement with defendant; alleged that if plaintiff worked the land, he abandoned the same, and did not pick the cotton when it was ready to pick; alleged that plaintiff did not protest to defendant; and that the plaintiff was not damaged in any sum either actual or punitive.

The cause was tried to a jury, and resulted in a verdict in favor of the plaintiff for $125 actual damages, and $115 punitive damages. The defendant filed his motion for new trial, setting up grounds as follows: (1) Excessive damages appearing to have been given under the influence of passion and prejudice; (2) that the verdict it not sustained by sufficient evidence and is contrary to law; (3) errors of law occurring at the trial and excepted to by the defendant; and (4) error of the court in overruling demurrer to the evidence of the plaintiff. This motion for new trial was overruled, to which the defendant excepted. The trial court entered its judgment against defendant, according to the verdict.

The grounds for reversal, as set forth in the petition in error, are as follows:

"(1) Said court erred in overruling the motion of plaintiff in error for new trial.

"(2) Said court erred in admitting evidence on the part of defendant in error.

"(3) Said court erred in refusing and ruling out competent and legal evidence on the part of plaintiff in error.

"(4) That there was not sufficient competent evidence to warrant the jury finding a judgment in favor of the defendant in error and against the plaintiff in error, and especially as to exemplary or punitive damages."

1. There is no assignment of error which in terms attempts to attack the sufficiency of the petition. A motion to require the plaintiff to make his petition more definite and certain was filed, and overruled by the court, and exception allowed; and the defendant filed a demurrer to the petition, which was overruled by the court, and no exception taken. These rulings were not specifically called to the attention of the trial court by any grounds set forth in the motion for new trial, and cannot be reviewed in this court. While it is true that an assignment of error in the appellate court, to the effect "that the court erred in overruling the motion for new trial," will present for the consideration of the Supreme Court every ground for new trial properly embraced in said motion, yet, if any error was made by the trial court, it was not called to the attention of the trial court, in the matter of such rulings, in this case. And if there were errors in such rulings, they were not errors occurring on the trial. Menton v. Shuttee, 11 Okla. 381, 67 P. 478; Lookabaugh v. Epperson, 28 Okla. 472, 114 P. 738; O'Neil v. James, 40 Okla. 661, 140 P. 141.

2. As to the second and third assignments of error, relating to the admission and rejection of evidence, Rule 10, of the Rules of the Supreme Court of Oklahoma (159 Okla. vii), relating to briefs and requisites thereof, among other things, provides:

"Where a party complains of the admission or rejection of testimony, he shall set out in his brief the testimony to the admission or rejection of which he complains, stating specifically his objections thereto."

Considerable of the testimony taken at the trial is set forth in brief of plaintiff in error, but the abstract of such testimony as is contained in such brief shows no objections interposed, no rulings of the trial court thereon, and no exceptions taken, and these assignments of error are supported neither by authorities nor by argument. Assign-

ments of error supported neither by authorities nor argument will not be considered in this court. McGrath v. Durham, 151 Okla. 55, 1 P. (2d) 718; Grand Lodge of Brotherhood of R. R. Trainmen v. Scott, 147 Okla. 161, 297 P. 269.

3, 4. As to the first and fourth assignments of error, these are sufficient to require an examination of the sufficiency of the evidence to support the verdict. It is true that the defendant interposed a demurrer to the evidence in chief of the plaintiff, and that thereafter, and after the defendant had introduced his evidence, the plaintiff introduced rebuttal evidence, and that defendant failed to renew his demurrer to the evidence, or request an instructed verdict, and permitted the issues joined to be submitted to the jury upon all the evidence, without objection or exception. Ordinarily, the verdict, under such circumstances, on review in this court, would be conclusive so far as such evidence is concerned, except as to excessive damages appearing to have been given under the influence of passion or prejudice. That is, this court would not pass upon the error of a trial court, in such case, in overruling such demurrer to the evidence, unless the demurrer was renewed after all the evidence was in, or a request for an instructed verdict.

The question in this case is, whether there is any evidence to sustain the verdict. If there is any evidence to sustain the verdict for actual damages, then that part of the verdict should stand. And again, if there is any evidence to sustain the verdict for exemplary or punitive damages, then that portion of the verdict should stand, provided, of course, that actual damages should have been awarded. This question was brought to the attention of the trial court, in the first and second grounds of the motion for new trial, which were overruled, and exception taken; and the question is brought before this court in the first and fourth assignments of error, sufficient at least to require an examination of the evidence in this court.

No question was ever raised in the trial court as to whether the action should have been brought for breach of contract rather than in tort. The case was tried as one of conversion, and the court instructed upon the theory of conversion, and no objection was made to any of the instructions to the jury. And, where the facts do not authorize trover, the court may nevertheless try the case as one in conversion, if no objection is made. And it is apparent that all parties acquiesced in the theory that the case was one in conversion.

On first examination of the evidence in this case, one would get the impression that the plaintiff was a share cropper, and had no estate in the land or in the crop until the landlord assigned him his share; and that the crop of cotton was a part of the realty and not personal property, and so not subject to conversion, as has been held by this court in the case of Taylor v. Riggins et al., 129 Okla. 57, 263 P. 146. A closer examination of the evidence indicates that the defendant, the owner of the land, may have given to the plaintiff all the cotton that was raised on the 9½ acres. There is no testimony in the record that the defendant was to receive any part of such cotton, either on the part of the plaintiff or on the part of the defendant, and no other witness in the case so testified. There is a conflict in the testimony as to whether plaintiff was permitted to plant a crop before employment to work for the defendant for $1 per day, or afterwards, or whether there was any swapping of work as between the plaintiff and defendant. But the testimony, as a whole, shows no ownership in common, in the crop in question, as between the plaintiff and defendant, and this court cannot presume such ownership in common to have existed. In the case of Ping v. Kershaw, 89 Okla. 43, 213 P. 840, this court held that a crop of hay on lands which the plaintiff in such case had rented was personal property and subject to conversion. If perennial crops, under certain circumstances, can be held subject to conversion, certainly cotton, a product of annual planting, could be held subject to conversion under proper circumstances.

This court has defined conversion to be any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein. Aylesbury Mer. Co. v. Fitch, 22 Okla. 475, 99 P. 1089; Bilby v. Jones, 39 Okla. 613, 136 P. 414; Dodd-Lear Hardwood Lbr. Co. v. Gyr, 44 Okla. 630, 146 P. 16; Probst v. Bearman, 76 Okla. 71, 183 P. 886; Sivils v. Aldridge, 62 Okla. 89, 162 P. 198; First Nat. Bank of McLoud v. City Nat. Bank of Wellington, Tex., 71 Okla. 52, 175 P. 253; Mayo v. Thede, 73 Okla. 181, 175 P. 348; Wilson Motor Co. v. Dunn, 129 Okla. 211, 264 P. 194; Ben Cooper Motor Co. v. Amey, 143 Okla. 75, 287 P. 1017.

The evidence on the part of the plaintiff shows that defendant in March, 1929, told

plaintiff that he could put in a crop on two small tracts, aggregating about 12½ acres, land belonging to defendant, 9½ acres on the tract in question and about 3 acres on another tract, and would furnish plaintiff land, teams, tools, and seed to make the crop, and would furnish p`aintiff with provisions until July 1, 1929; the plaintiff planted cotton on both tracts and moved upon the land. Plaintiff did some work for defendant and was paid $1 per day for this work. In September, 1929, when such crop was about ready for picking, the defendant, while plaintiff was away, and without the consent of plaintiff, fenced the 9½ acre tract into a pasture and turned 10 or 12 head of his mules and horses upon the cotton crop; that the crop would have produced 3 bales of cotton and that lint cotton was of a value of from 16c to 18c per pound, and that a bale of cotton was considered 500 pounds; that the defendant's mules and horses destroyed the crop of cotton. The plaintiff said he caused a notice to be put up on a gate onto the land, requesting the defendant not to pasture the cotton, and also had his attorney write the defendant a letter making same request; that plaintiff did not see the defendant personally about the matter; said he was afraid of the defendant, but did not say why; said he got no part of the cotton from this tract or proceeds of the sale thereof. Plaintiff remained on the land and gathered the crop on the 3-acre tract.

The defendant admitted owning the land, and admitted a contract with the plaintiff whereby the crop was planted; admitted that he fenced the 9½ acres and did turn his horses and mules upon the cotton, and gave as his reason that the plaintiff had abandoned the crop. Admitted that he saw the notice and got the letter written by plaintiff's attorney. Says the crop was in bad shape and that he caused all of the cotton to be picked, and that it was sold, the cotton amounting to 730 pounds of seed cotton, and the price being $38.32. The cotton was sold by one M. G. Wallace, who picked at least a part of it, and the check in payment was issued, payable to M. G. Wallace.

There can be no question but the acts of the defendant were wrongful and a trespass upon the rights of plaintiff. There is evidence to sustain the verdict for $125 actual damages.

Whether exemplary damages will be allowed in actions for injuries to property depends very largely upon the nature of the injury or wrong complained of. They are allowable only where such injury is attended by or accompanied with some evil intent, willful fraud, malice or gross negligence.

Section 9962, Okla. St. 1931, provides that:

"In any action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud or malice, actual or presumed, the jury, in addition to the actual damages, may give damages for the sake of example, and by way of punishing the defendant."

In the case of Aaronson et al. v. Peyton, 110 Okla. 114, 236 P. 586, this court said:

"To entitle a plaintiff to recover exemplary damages in an action sounding in tort, the proof must show some element of fraud, malice or oppression. The act which constitutes the cause of action must be actuated by, or accompanied with, some evil intent, or must be the result of such gross negligence—such disregard of another's rights—as is deemed equivalent to such intent."

The evidence touching upon the motives of the defendant in fencing and pasturing this cotton patch is practically nothing, but the evidence upon his course of conduct, as contrasted with that of plaintiff or that of any other ordinary man, is sufficient to establish a clear instance of one man totally disregarding the property rights of another. Plaintiff was away from home part of the time, working for other people, but defendant saw him for the purpose of complaining that he (plaintiff) was neglecting the crop. Defendant did not communicate to plaintiff that he intended to fence and pasture this cotton patch. When plaintiff became aware that defendant had fenced it and was gazing his cattle therein, he posted on the gate or some other appropriate place a written request to defendant to desist. Defendant wholly ignored this written request. Under these facts the court did not err when it submitted the issue of exemplary damages to the jury, and the jury had sufficient evidence upon which to base a verdict for exemplary damages. Their verdict therefor is only $115, and it cannot be said that this verdict is excessive.

The judgment of the trial court is affirmed.

The Supreme Court acknowledges the aid of Attorneys George L. Zink, Clayton Carder, and Finley McLaury in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After their analysis of law and facts was prepared by Mr. Zink and approved by Mr. Carder and

Mr. McLaury, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was modified in certain respects, and, as so modified, was adopted.