## FAST v. GILBERT et al.

No. 23706.  April 21, 1936.

Rehearing Denied May 19, 1936.

A. R. Ash Jess C. Wesner, and Meacham, Meacham & Meacham, for plaintiff in error.

Geo. W. Cornell and A. J. Welch, for defendants in error.

OSBORN, V. C. J. This action was instituted in the district court of Custer county by Albert Gilbert and Ella Gilbert, hereinafter referred to as plaintiffs, against G. G. Fast, hereinafter referred to as defendant, as an action to cancel a deed on the ground of forgery. When the cause came on for trial the issues of fact were submitted to a jury and a verdict was returned in favor of plaintiffs. Thereafter the trial court entered judgment in favor of plaintiffs, and defendant has appealed.

There are nine assignments of error presented in the petition in error but only one of these assignments of error is presented or argued in the briefs. The others will be treated as abandoned. Belcher v. Spohn, 170 Okla. 139, 39 P. (2d) 87; McKee v. Producers & Refiners Corporation, 170 Okla. 559, 41 P. (2d) 466.

The only assignment of error submitted for our consideration is the failure of the trial court to grant a new trial on the ground of misconduct on the part of counsel for the prevailing party. The jury was impaneled on Saturday, but the taking of evidence was not begun until the following Monday. In the meantime, on Sunday afternoon, the attorney for plaintiff went to the home of one of the jurors, Mr. Freeman, and asked him if he knew whether another juror, Mr. Bartlett, was prejudiced against said attorney. The juror, Freeman, did not know, and the attorney requested that he learn whether Bartlett was prejudiced against him personally and subsequently the juror, Freeman, did ask Juror Bartlett whether he was prejudiced against plaintiff's attorney, and was told that he was not prejudiced. It is not contended that when the attorney visited the home of the juror any discussion was had relating to the merits of the case which the juror had been impaneled to try. As we view it, it is not necessary to weigh the motives nor determine the purpose of the visit of the plaintiffs' attorney to the juror during the time the cause was being tried. It is sufficient to say that regardless of the motives or purpose of said attorney his conduct in seeking out the juror and entering into such discussion was improper. The question presented is whether or not such conduct on the part of plaintiffs' attorney justifies a reversal of this case.

This is an equitable proceeding and in cases of equitable cognizance, while the trial judge may call in a jury or consent to one, for the purpose of advising him upon questions of fact, he may adopt or reject their conclusions as he sees fit, and the whole matter must eventually be left to him to determine. It is not only the right but the duty of the court to determine all questions of fact independent of the finding of the jury. Mid-Continent Life Ins. Co. v. Sharrock, 162 Okla. 127, 20 P. (2d) 154; Teachers Conservative Inv. Ass'n v. England, 115 Okla. 298, 243 P. 137; Crump v. Lanham, 67 Okla. 33, 168 P. 43; Kentucky Bank & Trust Co. v. Prichett, 44 Okla. 87, 143 P. 338.

In compliance with the duty cast upon him in a proceeding of this nature, the trial court entered his own findings of fact, which were in favor of plaintiffs and against the defendant, and thereafter heard the evidence relating to the alleged misconduct of counsel, and after due consideration overruled the motion for new trial predicated in part on said misconduct. In this court plaintiff in error seeks the reversal solely on the ground of said misconduct. The question of whether the judgment of the trial court is against the clear weight of the evidence is not raised.

In this case we have carefully reviewed the evidence, and had the verdict of the jury, or the judgment of the court, been otherwise than rendered herein, on review we would be compelled to reverse the same as being contrary to the clear weight of the evidence.

The trial court made a very thorough investigation of the said misconduct on the hearing of said motion for new trial, and after said hearing denied the same, thereby sustaining his prior findings of fact. The misconduct went only to a juror who was sitting in an advisory capacity. Unless the judgment of the trial court is against the clear weight of the evidence, a miscarriage of justice did not take place, the responsibility being upon the court to make independent findings of fact regardless of the

determination of said questions by the jury. In the absence of a claim by plaintiff in error that the judgment of the trial court is contrary to the weight of the evidence, it is apparent that the misconduct alleged is not a proper basis for the assertion of a right of reversal of said cause.

The judgment of the trial court is affirmed.

McNEILL, C. J., and BAYLESS, WELCH, CORN, and GIBSON JJ., concur. RILEY, BUSBY, and PHELPS, JJ., dissent.

PHELPS, J. (dissenting). I find it impossib'e to agree with the majority opinion without at the same time losing sight of the plainest principles of common reasoning. It is of course apparent that the opinion is based upon the assumption that the trial judge was uninfluenced by the jury's verdict. This is an assumption without foundation, either in reason or in the record. Stated simply, the basis of the opinion is this: (1) The judge was not bound by the verdict, (2) therefore it follows that he was not in the least influenced by the verdict. This is only another way of saying that because a thing could have happened it therefore did happen.

An additional stumbling block to such reasoning, if applied to the instant case, is that it leads to a paradox. It happens that the judge arrived at the same conclusion as did the jury. Had he arrived at the opposite conclusion it would be proof that he was not sufficiently influenced by the verdict to change his own opinion, but since he arrived at the same conclusion. and the majority opinion proceeds on the assumption that he was not influenced at all, we have the interesting result that, regardless of which way the jury holds, the presumption is that the judge will be absolutely uninfluenced thereby. Therefore a verdict for the plaintiff means the same thing as a verdict for the defendant, and neither of them means anything.

The fact of the matter is that we have no information on the subject at all. How do we know that the verdict of the jury had no influence in the forming of the trial judge's conclusions? There is nothing in the record which could throw light on the question. other than the fact that the jury and judge agreed, which would tend to show, if anything at all, that the judge was influenced by the verdict. If we **must** indulge in guesswork on the subject, why not adopt the more reasonable and logical guess? Why arbitrarily conclude that the judge ig-

nored the jury, merely because he could have done so had he desired?

Let us not forget the real point in the case, which is the significance of misconduct with a jury. The rules on misconduct or tampering are concerned more with the pure and undefiled administration of justice; to the end that public confidence in our court system be maintained, fostered, and encouraged than on questions of what may have been the real effect of the misconduct in the particular case. It is an almost universal rule that the nature of the misconduct determines whether a new trial shall be granted, and that the court wi'l not inquire as to its real effect on the jury or judge. If the external aspect of the situation reveals a highly suspicious circumstance brought about deliberately by the prevailing party, the courts seldom permit him to attempt condonation of the offense when caught, by painting it some other color. This was admirably pointed out in Garvin v. Harrell, 27 Okla. 373, 113 P. 186. And so it is that whether the jury was influenced in fact by misconduct calculated to influence it, or whether the judge was influenced thereby in turn, is not the test anyway, the real test being the nature and circumstances of the misconduct and its inherent possibilities. The rule is synonymous with that in other questions relating to public policy, wherein the test is whether the rule has been violated rather than the internal effect of the violation in the particular case, as between the immediate parties. It would be much better that the faith of the public in the integrity of juries and courts be maintained, and that the guilty party in this case be required to retry his action along ethical lines, than to open the door to such practices by the adoption of this new rule.

And it **is** a new rule! Of the many distinctions between the principles and practices of equity and law this is the first instance in the history of American jurisprudence which, in an extended search, I have been able to find wherein it has been held that a prevailing party may be guilty of grave misconduct with jurors, with perfect freedom and safety, merely because it is an equity action! I think that there can be *no question more important to life, liberty,* and the security of freedom and property than that of the faith and confidence of the people in their courts, and that the importance of the question in the instant case, in its final analysis, demands that we face the facts and speak frankly. Under the rule adopted, to the effect that to campaign with

jurors in an equity trial is permissible, then it follows that from a purely civil viewpoint and for its effect on the civil case being tried (excluding the criminal prosecution), it is also permissible to bribe a juror in an equity trial, or it is permissible to bribe all twelve jurors. It is permissible, because it is an equity action wherein the judge is not bound at all events to follow the verdict, for the prevailing party to wine and dine the jury, to mix freely with it in the corridors and do all things calculated to induce a favorable verdict based on other than the evidence. It must also be permissible to discuss the evidence or the merits of the case with the jurors, for the judge is not bound by their verdict, and if he happens to agree with the verdict it is a mere coincidence, the presumption being that he was not influenced thereby.

Passing mention is made in the majority opinion of the fact that the attorney did not discuss the merits of the case with the juror. My attention has not been called to any decision where that makes any difference. Entertaining, "wining and dining," have no relationship to the merits of the case, as that term is usually used, nor has bribery itself, and yet in such instances the courts uniformly stamp it as misconduct so far beneath the dignity of a trusted officer of the court as to necessitate correction. Could there have been any motive, purpose, or reason for this visit and interview, and its contemplated searching out of other jurors, other than one directly and necessarily concerned with the outcome of the lawsuit? From the practical viewpoint the result of the case is superior to its merits.

There is no requirement in the reported cases that the objectionable conduct must have related to the merits of the case in order to justify a new trial, just as similarly there is no requirement that the conduct must be shown to have actually had an evil effect or to have influenced the verdict. Jones v. Frank, 62 Okla. 26, 161 P. 795.

In cases involving the precise question now before us no distinction has ever before been attempted which would excuse tampering with an equity jury. In fact we have sweepingly gone on record to the contrary, as reflected in Garvin v. Harrell, supra, repeated and readopted in Jones v. Frank, supra:

"It may be useful to the party to learn that a good cause may be injured, but cannot be promoted, by conduct of this sort, and to the public generally to know that it will be tolerated **in no case whatever.**"

It is said in the majority opinion that "In the absence of a claim by plaintiff in error that the judgment of the trial court is contrary to the weight of the evidence, it is apparent that the misconduct alleged is not a proper basis for the assertion of a right of reversal." This again is new to me. I confess that for some years I have been under the impression that flagrant misconduct of the prevailing party, with the jury, had no connection at all with the relative state of the evidence. There is, as I understand it, a wide leeway possible to the fact-finding body, be it jury or judge, in the average controverted case, and there are many judgments affirmed on this principle which would likewise have been affirmed if the fact-finding body had held oppositely. And **it is for this very reason** that any attempted corrupting of the fact-finding body itself, which may possibly have accomplished its purpose, renders it unnecessary to discuss whether the guilty party was entitled to win on the evidence. In other words, "a good cause may be injured" by such conduct, regardless of its merits, and such conduct will be tolerated "in no case whatever."

Let us see where we arrive if we apply the harmless error doctrine to jury tampering: Let us assume one of those controverted close cases wherein a fact finding in either direction would be affirmed as not "against" the weight of the evidence in an equity case, or supported by some competent evidence in a law case. If the **source** of that fact finding (the jury or judge) has been corrupted, we nevertheless have a finding that could not be disturbed as being against the weight of the evidence, or unsupported by evidence, because of the mere fact that if the jury had **not** been corrupted it **could** have made the same finding. In other words, the dishonest jury's verdict will not be disturbed if there is enough evidence to support it, even though it **could** have made an opposite finding, supported by evidence. The trouble with such reasoning is that we have no way of telling whether the finding **itself** is because of an honest conviction that the evidence on that side is more worthy of belief, or whether it is induced by the corruption. We may not discuss whether the finding is against the evidence until we first have a valid and unpolluted finding to start out with. We must first have a finding, that is, a lawful finding, before we can begin to weigh the evidence against it. The rule says to the appellant:

"Even admitting the verdict was induced by fraud, it must stand, because an honest

jury may have found the same way or it may have found the other way."

Such a rule cannot long remain the law in this state.

However attractive or plausible it may appear on first blush to say that complaint may not be made of jury tampering unless accompanied by a complaint that the judgment was contrary to the evidence, only slight analysis is needed to discover the fallacy thereof. No rule which is unable to stand the test of reason and analysis should ever be promulgated by any appellate court.

Too, it appears obvious that such a rule may not be restricted to equity trials, as in the distinction first mentioned above. It would of necessity apply equally to trial of actions at law, and it may now be said that the rule in this jurisdiction, according to the majority opinion, is that a judgment may never be reversed for jury tampering unless it is also shown that the verdict was not supported by competent evidence. As pointed out above, the rule entirely overlooks the fact that the purity of the **verdict itself**, is logically the very thing in question, and the question whether it is supported by evidence is entirely immaterial if it has had a defect in its own inception.

Altogether, I think that the majority opinion has created two new rules which so far as I can find have never before been advanced by any court; that neither of them may be supported by logic or reason, and that both of them will permit practices which have always heretofore been severely condemned by this and other courts, and which in certain cases have even served for grounds of disbarment. The majority opinion approaches solution of the question from the viewpoint of the individual case, and having chosen the wrong field of inquiry, fails even in that. While it may or may not be true that the outcome of the case coincided with justice, the procedure did not. It has never been the rule that a correct result will be affirmed, even though it was attained illegally and corruptly. But regardless of the instant case, the fact remains that we have created a rule which must necessarily permit, or even encourage, corruption of juries in equity trials. I think it would be much better to adhere strictly to the doctrine always heretofore adhered to, as announced in Garvin v. Harrell, 27 Okla. 373, 113 P. 186, 35 L. R. A. (N. S.) 862, Ann Cas. 1912B, 744:

"A lawsuit is, at its best, a misfortune, yet, when a citizen feels that his rights have been invaded and other means have failed, it is the only method prescribed by the law of the land for the vindication thereof and the administration of a remedy. He is denied the privilege of seeking and forcing redress by his own strong arm and compelled to resort to the established tribunals for remedy. A resort to law is usually at the unsuccessful conclusion of all other efforts for adjustment, and all parties confidently appeal to the courts with the abiding conviction that they are right and that justice will be administered unpolluted and exact. It is essential to the well-being of society that this confidence be encouraged and sustained and that the faith of the people in the courts be not shattered. In order that this may be so, the jury, the trial and all the proceedings connected with them should not only be free of wrongdoing, but their administration should be so untainted, free, clear and above board that there will be no room for suspicion that the conclusion reached was influenced by other matters than an unbiased consideration of the law and the evidence, and this considered and applied by an honest, upright judge and jury. The fair and impartial jury, duly impaneled, sworn and charged to try the cause and true deliverance make, has been the bulwark of the best system yet devised by man for the determination of controverted questions of fact, and our people are content and feel secure in their persons and property because of their abiding confidence in its integrity. When the unfortunate parties, then, unable to settle their own differences, leave them to the judgment of a court and jury, the results should come to them both untainted by a breath of suspicion that aught else than the law of the land and their evidence was even remotely responsible for the verdict. In this case we may absolve the plaintiff from any intention whatsoever to corruptly influence the jury by the courtesies which he extended to some of its members, and we may absolve the jurors of a suspicion on our part that their verdict was responsive to aught else than the law and the evidence as delivered by the court and the witnesses; but the defendant evidently does not entertain this view, and he has a right, of which he cannot lawfully be deprived, to have the facts of his case determined by a jury upon which the **possibility** of undue influence has not been exerted."

I think no court having an eye to maintenance of the pure administration of justice should sanction such conduct, on any grounds whatsoever. It should at all times be the effort of attorneys and courts to see that tactics and maneuvers of the political arena are as far removed from juries as possible. If juror Bartlett was prejudiced against plaintffi or his attorney, plaintiff had his means of discovering that fact in the voir dire examination. It is true that

method is not perfect, but it is the best method we have, and certainly it may not be improved by the device of having jurors go sleuthing among themselves, at the instance of one of the parties and in the absence of and entirely without the knowledge of the opposing party.

Whenever the courts begin to condone such conduct as was here resorted to, then that instant the courts will begin the encouragement of their own destruction, and shortly by inches and degrees, the obtaining of justice according to any dependable rules of proper procedure will be extremely difficult. I express the prediction that the majority opinion will permit such unscrupulous practices in equity trials that it will be only a matter of time until it will become necessary to recede from the doctrine therein announced.